# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

FRANK TADDEO, et al.,

    Plaintiffs,

v.

AMERICAN INVSCO CORPORATION, et al.,

    Defendants.

Case No. 2:08-CV-01463-KJD-RJJ

**ORDER**

Currently before the Court is Defendant Dale R. Campbell's ("CAMPBELL") Motion to Dismiss (#7).[1] Plaintiffs filed a Response in Opposition (#15), to which Defendant CAMPBELL filed a Reply (#24). CAMPBELL seeks that the Court dismiss Plaintiffs' claims against him pursuant to Fed. R. Civ. P.12(b)(2) and (5) for lack of personal jurisdiction and insufficient service. Rule 12(b) allows a party to assert a defense based on lack of personal jurisdiction or insufficient service before filing a responsive pleading.

**I. Background**

The Complaint in this case was originally filed in state court on September 26, 2008. Plaintiffs' filings allege that in 2005 and throughout 2006, Plaintiffs were informed of an investment

---

[1] The Court notes that there are numerous other motions currently pending. This Order examines the case's entire history, yet treats only Defendant Campbell's Motion to Dismiss (#7) here. Rulings on the remaining pending motions are forthcoming.

opportunity regarding the Meridian Private Residence Condominiums ("Meridian Condominiums") which had recently been acquired by Defendant AMERICAN INVSCO CORPORATION ("INVSCO"), and were being converted into luxury condominiums. Plaintiffs allege that the condominiums were sold by Defendants INVSCO, through its agents and subsidiaries including AMERICAN INVSCO REALTY GROUP, INC. ("REALTY"), Michael Mackenzie ("MACKENZIE") and KOVAL-FLAMINGO, LLC ("KOVAL") during 2006 and 2007. Plaintiffs allege that Defendants INVSCO, MACKENZIE and REALTY artificially inflated the prices of the condominiums and induced sales by offering a "positive cash flow" lease back program. (Pet. for Removal Ex. C-1 at 4.) According to Plaintiffs, the lease back program involved the Defendants leasing the sold condominiums from Plaintiffs for two to three years at a fixed rate and paying for Plaintiffs' Homeowners Association ("HOA") fees and real property taxes. Plaintiffs allege that INVSCO represented to Plaintiffs and Plaintiffs' lenders that the condominium units were for residential purposes only, and not for short-term rental, hotel, or resort use. (Id.) Plaintiffs also allege that INVSCO, KOVAL, MACKENZIE and REALTY concealed that they had received a proposal in June of 2006, to rent the condominium units on an overnight basis, and at the time of sale, were already engaged in leasing said units on an overnight basis. (Id.) Allegedly, Defendants failed to disclose that the subject property lacked the proper zoning to conduct hotel-type operations.

    At the time of signing the purchase agreement, some of the Plaintiffs signed a rental agreement leasing back the purchased units to Defendant KOVAL or CONDOMINIUM RENTAL SERVICES, INC. ("CRS") who indicated that the units may have already been rented out to a third party, though not indicating the type of rental. Plaintiffs allege that at the time of purchase, the HOA was controlled by Defendants INVSCO, KOVAL, and CONAM and run by Defendant MACKENZIE.[2]

---

[2] Plaintiffs additionally allege that MACKENZIE increased the HOA assessments, but in violation of Nevada Statutes, failed to provide the owners with any accounting of the assessments that were paid to the HOA, or to provide Plaintiffs with an annual financial report.

2

Plaintiffs allege that the HOA was comprised of employees or affiliates of INVSCO, including Rebekah Desmet (herein "Desmet") and MACKENZIE and operated as an alter ego of INVSCO, and that members of the HOA appropriated to themselves portions of the clubhouse that were supposed to be turned back to the HOA.

According to Plaintiffs, in September 2007, they received a letter from the HOA directors informing Plaintiffs of a change in land use designations in order to fulfill Clark County requirements for overnight rental activities.[3] Some Plaintiffs were offered an extended lease for overnight rentals with Defendant MERIDIAN PRIVATE RESIDENCES CH, LLC (herein "MERIDIAN PRIVATE RESIDENCES") at the same rental rate INVSCO and its subsidiaries were obligated to pay. CRS/INVSCO contended that they could no longer afford to pay the rent agreed to under the lease agreements. According to Plaintiffs, the only other alternative they were offered, was to have no further rental income.

On January 28, 2008, Defendants MERIDIAN LUXURY SUITES HOTEL sent a letter to various unit owners, offering the owners two options; the first option was to enter a lease with MERIDIAN PRIVATE RESIDENCES, and the other option was to terminate the existing lease. The letters indicated that CRS/INVSCO would "no longer operate the rental program related to your existing lease, so you will need to select either Option A or Option B." The letter was signed in part by DALE R. CAMPBELL, as manager of the MERIDIAN LUXURY SUITES HOTEL.[4]

On or around February 1, 2008, many of the Plaintiffs entered into a Condominium Resort Lease with MERIDIAN PRIVATE RESIDENCES. According to Plaintiffs, during the next month, a

---

[3] Plaintiffs allege that at no time when Plaintiffs entered into the leases with MERIDIAN PRIVATE RESIDENCES, did anyone connected with MERIDIAN PRIVATE RESIDENCES nor CAMPBELL, nor any individual or affiliate of INVSCO inform Plaintiffs that the rental of their units for overnight stays was illegal.

[4] Plaintiffs aver that there is no entity known as the MERIDIAN LUXURY SUITES HOTEL and it appears to be the name given to the resort rental program. The rental agreements attached as Exhibit 2 to Plaintiffs' Response in Opposition, however, notes that MERIDIAN PRIVATE RESIDENCES was doing business as the MERIDIAN LUXURY SUITES HOTEL. (See #15 Response in Opposition Ex. 1; Ex. 2.)

series of letters were sent to Plaintiffs from the Board of Directors of the HOA informing unit owners of a need to change the covenants, conditions, and restrictions to permit overnight rental activities.

In July 2008, Clark County officials found that the overnight rental program was in violation of the licenses and uses granted to the Meridian Condominiums, and as a result, Meridian Condominiums owed the County over $560,000 in back room taxes. In July or August 2008, MERIDIAN PRIVATE RESIDENCES, whose managing member is alleged to be CHC MANAGEMENT, LLC, whose managing member is alleged to be CHC PARTNERS, LLC, who is allegedly managed and owned by Defendant CAMPBELL, stopped payments under the various leases entered into with some of the homeowners of the Meridian Condominiums and also stopped the HOA assessment and property tax payments.[5] As a result, the Plaintiffs who had not entered into leases with MERIDIAN PRIVATE RESIDENCES and who maintained leases with either KOVAL or CRS ceased to receive payments, which caused many owners of Meridian Condominiums to default on their loans. Plaintiffs allege that this, and other aspects, suppressed property values. Additionally, Plaintiffs allege that Defendants have caused furniture, accessories, and appliances to be removed from the condominium units.

Plaintiffs filed an Ex-Parte Application for Temporary Restraining Order and Motion for Preliminary Injunction in Clark County District Court on October 6, 2008. On October 7, the Clark County District Court entered an agreed order granting, in part, Plaintiffs' Temporary Restraining Order. Plaintiffs filed an Amended Complaint on October 22, 2008. The Amended Complaint was

---

[5] Plaintiffs allege that Defendants maintained possession, and continued renting out the premises and collecting rents at that time. (Pet. for Removal Ex. C-1 at 6.)

Additionally, according to Exhibit T-1 a letter sent to unit owners by Defendant Mackenzie on August 1, 2008, regarding then upcoming HOA board elections, indicates that MERIDIAN PRIVATE RESIDENCES was a Michigan based venture capital company who stepped in when CRS was experiencing financial hardship due to construction delays on the Meridian Condominium extension program. According to MACKENZIE's letter, MERIDIAN PRIVATE RESIDENCES provided the Meridian Condominium project $8 million in additional funding between October 2007, through June 2008, funding owner payments and the start-up costs for the hotel operation. (Pet. for Removal Ex. C-3, T-1). MACKENZIE stated that MERIDIAN PRIVATE RESIDENCES stepped in to provide "bridge financing money to keep the owners whole and start up the hotel until such time as the hotel could provide sufficient income to the owners to replace the CRS payments." (Id.)

4

brought as a purported class action.[6]  On October 23, 2008, Defendants removed the litigation to federal court pursuant to 28 U.S.C. §§ 1332(d) and 1453(b).  The Amended Complaint brings eighteen causes of action alleging *inter alia* claims for negligence, fraud, misrepresentation, conversion, and breach of contract.  Here, Defendant CAMPBELL seeks that the Court dismiss the claims against him for lack of personal jurisdiction.

**II. Analysis**

When jurisdiction is appropriately challenged, the party asserting jurisdiction bears the burden of establishing its existence.  See Taylor v. Portland Paramount Corp., 383 F.2d 634, 639 (9th Cir. 1967).  Plaintiffs' Amended Complaint states that Defendant CAMPBELL was doing business in Clark County (as legal counsel or part of the law firm who was legal counsel) to INVSCO, and that CAMPBELL was the managing member of MERIDIAN PRIVATE RESIDENCES, and thus that he was instrumental in the promulgation of the leases at issue and the alleged operation of a hotel using the units owned by Plaintiffs.  CAMPBELL, in opposition, avers that the Court cannot exercise personal jurisdiction over him, because he is not affiliated with INVSCO, and that his affiliation with MERIDIAN PRIVATE RESIDENCES is sufficiently attenuated so as to preclude personal jurisdiction, as he claims he did not operate any of the day to day activities associated with Meridian Condominiums.  (Mot. to Dismiss at 2.)

Plaintiffs aver that Defendant CAMPBELL has waived his right to contest personal jurisdiction by making appearances in the state court proceedings.  Additionally, Plaintiffs aver that CAMPBELL has directed activities towards the forum sufficient to establish personal jurisdiction when he signed the letter, as manager of the MERIDIAN LUXURY SUITES HOTEL sent to Plaintiffs, indicating that CRS/INVSCO was no longer operating the rental program related to their existing lease.

---

[6]Plaintiffs filed a Motion to Certify Class (#42) that is currently pending.

**A. Waiver**

Plaintiffs aver that Defendant Campbell has waived his right to contest personal jurisdiction under Rule 12(h) by filing an appearance in state court, and by appearing in the hearing on Plaintiff's Motion for a Temporary Restraining Order. The Court does not agree. Though pursuant to Rule 12(h) a defense "may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct", Defendant has timely asserted his objection here. Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 168 (1939). Plaintiffs cite cases from various jurisdictions wherein a party has waived person jurisdiction through conduct or by failing to timely object to jurisdiction; however, such cases are easily distinguishable from the instant matter.[7] The purpose of the Rule, is "to expedite and simplify proceedings in the Federal Courts" C. Wright & A. Miller, 5A Federal Practice ad Procedure § 1342, at 162 (2d ed. 1990). Here, Defendant CAMPBELL has timely and effectively objected to personal jurisdiction pursuant to Rule 12(b). Defendant's objection to jurisdiction was filed six days after the case was removed to federal court, and three weeks after the state court entered an agreed upon Order on Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction. Though Defendant CAMPBELL participated in the state court hearing on Plaintiffs' Motion for Temporary Restraining Order and a status conference on Plaintiffs' Motion for Preliminary Injunction, the Court finds that Plaintiff's 12(b) Motion was timely filed, and that Plaintiff did not waive his right to contest jurisdiction by failing to object to jurisdiction prior to the hearing on the Temporary Restraining Order.

**B. Personal Jurisdiction**

Where, there are no applicable federal statutes governing personal jurisdiction, the district court applies the laws of the state in which its sits. See Dole Food Co. v. Watts, 303 F.3d 1104, 1110 (9th Cir. 2002). Nevada's long-arm statute bestows the broadest grant of personal jurisdiction

---

[7] Plaintiffs cite Yeldel v. Tutt, 913 F.2d 533 (8th Cir. 1990), wherein, the court found the defendant had waived jurisdiction in spite of having asserted an objection in its answer, because the defendant delayed raising the issue until after discovery, pre-trial motions, and a five day trial.

consistent with due process. See Nev. Rev. Stat. § 14.065(1). Because Nevada's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800–01 (9th Cir. 2004); Trump v. Eighth Jud. Dist. Ct., 109 Nev. 687, 698, 857 P.2d 740, 747 (1993).

"For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" Schwarzenegger 374 F.3d at 801 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The court gains personal jurisdiction over nonresidents by either (1) "general jurisdiction," which arises where the defendant's activities in the forum state are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over it even if the cause of action is unrelated to those contacts, or (2) "specific jurisdiction," which arises when a defendant's contacts with the forum state have given rise to the claim in question. See Gator.Com Corp. v. L.L. Bean, Inc., 341 F.3d 1072, 1076 (9th Cir. 2003).

**1. General Jurisidiction**

The Court begins with an analysis of whether Defendant CAMPBELL's contacts with Nevada are sufficient to confer general jurisdiction. "The standard for establishing general jurisdiction is 'fairly high. . . .'" Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000) (quoting Brand v. Menlove Dodge, 796 F.2d 1070, 1073 (9th Cir. 1986)). The contacts with the forum state must be of a sort that "approximate physical presence." Id. "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." Id. A court focuses upon the "economic reality" of the defendant's activities rather than a mechanical checklist. Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1331 (9th Cir. 1984). Even if substantial or continuous and systematic contacts exist, the assertion of general

jurisdiction must be reasonable. See Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc., 1 F.3d 848, 852–53 (9th Cir. 1993).

In applying the "substantial" or "continuous and systematic" contacts test, courts have focused primarily on two areas. First, they look for some kind of deliberate "presence" in the forum state, including physical facilities, bank accounts, agents, registration, or incorporation. See Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952) (finding general jurisdiction when president of a Philippines-based corporation maintained an office, kept company files, held director meetings, distributed salaries, and conducted other company business in the forum state).

Defendant CAMPBELL avers that Plaintiffs cannot demonstrate that he has conducted or participated in activities that are substantial or continuous or systematic such that he should be considered present in this forum. The Court agrees. Plaintiffs have demonstrated no evidence that CAMPBELL owns property in Nevada, travels to Nevada regularly, or has consented to jurisdiction in Nevada under the general jurisdiction standard. However, the Court finds sufficient evidence that CAMPBELL's activities directed towards Nevada are sufficient to meet the forum's standard for specific jurisdiction.

**2. Specific Jurisdiction**

When general jurisdiction cannot be established, a district court uses a three-part test to determine whether it may exercise specific jurisdiction over a nonresident defendant: (1) The nonresident defendant must purposefully direct its activities at the forum state or consummate some transaction within the forum state; (2) the claim must arise out of or relate to defendant's forum related activities; and (3) the exercise of jurisdiction must be reasonable, comporting with fair play and substantial justice. See Schwarzenegger, 374 F.3d at 802.

As stated above, Defendant CAMPBELL disclaims specific jurisdiction, averring that his alleged conduct did not take place in Nevada, and any alleged conduct was undertaken in a representative capacity, "as the manager of the manager of a defendant limited liability company," and that requiring him to defend himself in this forum would be unreasonable. (Mot. to Dismiss at

8

10.) Specifically, CAMPBELL avers that his presence in this lawsuit is based upon his position as the member and manager of CHC PARTNERS, LLC, a Michigan limited liability company that is a member and manager of a second Michigan limited liability company, CHC MANAGEMENT, LLC, that is a member and manager of Defendant MERIDIAN PRIVATE RESIDENCES.  (Mot. to Dismiss at 2.)

As such, CAMPBELL asserts that his contacts with the forum state are too attenuated to subject him to personal jurisdiction, and further, that he is protected by the corporate shield doctrine. Additionally, CAMPBELL avers that he is a resident of Michigan, that his office is located in Michigan, and that he has not been present in Nevada save for a preliminary meeting prior to the commencement of any operations by MERIDIAN PRIVATE RESIDENCES.  Additionally, Defendant CAMPBELL disclaims Plaintiffs' assertion that he has ever been an attorney for Defendant INVSCO.

An examination of the Exhibits however, demonstrates that Defendant CAMPBELL directed a considerable amount of activity towards the forum through both the letter that was sent to all unit owners about the participation in the MERIDIAN LUXURY SUITES HOTEL in which CAMPBELL's name was listed as the "manager", and the execution of the actual lease agreements. (See Mot. to Dismiss Ex. H-9; Response in Opposition Ex. 3.)  Specifically, the letter allegedly sent to all unit owners on behalf of the MERIDIAN LUXURY SUITES HOTEL, and signed in-part by CAMPBELL states that the existing lease between the unit owners and CRS did not permit participation in the MERIDIAN LUXURY SUITES HOTEL program, and solicits the unit owners to enter into a new lease agreement with MERIDIAN LUXURY SUITES.  Additionally, CAMPBELL allegedly signed the Condominium Resort Lease Agreements with each unit owner as the authorized agent of MERIDIAN PRIVATE RESIDENCES, doing business as THE MERIDIAN LUXURY SUITES.  (See Mot. to Dismiss Ex. H-9).

CAMPBELL attempts to differentiate his participation with the MERIDIAN PRIVATE RESIDENCES or MERIDIAN LUXURY SUITES HOTEL by averring that he never acted as the

9

"manager of the partnership" as Plaintiffs assert, and stating that he "did not personally conduct any of [MERIDIAN PRIVATE RESIDENCES's] day-to-day activities that related to the operation of the resort. Defendant CAMPBELL additionally avers that he is protected from liability, and thus personal jurisdiction via the corporate shield doctrine. The Court is unpersuaded by Defendant's assertions. As stated above, the evidence demonstrates that Defendant CAMPBELL directed a considerable amount of activity towards the forum that had a legal and lasting significance. Though CAMPBELL claims protection via the corporate shield doctrine, Plaintiffs' Amended Complaint alleges acts of fraud and personal tort liability against CAMPBELL personally, as well as in his capacity as an agent for his limited liability companies. While the Court refuses at this time to examine the weight of said claims, the exercise of jurisdiction over Defendant CAMPBELL is certainly reasonable, and comports with the articulated standards of fair play and substantial justice.

**III. Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that Defendant Dale R. Campbell's Motion to Dismiss (#7), is **DENIED**.

DATED this 8th day of September 2009.

_____
Kent J. Dawson
United States District Judge

10