MICHAEL R. MUSHKIN, ESQ.
Nevada Bar No. 2421
STEVEN M. SHINN, ESQ.
Nevada Bar No. 6822
MICHAEL R. MUSHKIN & ASSOCIATES, P.C.
4475 S. Pecos Road
Las Vegas, Nevada 89121
Telephone: (702) 386-3999
Facsimile: (702) 454-3333
michael@mushlaw.com;
steven@mushlaw.com
*Attorneys for Plaintiffs*

WILLIAM H. GAMAGE, Esq.
Nevada Bar No. 9024
AMY M. GAMAGE, Esq.
Nevada Bar No. 9304
GAMAGE & GAMAGE
231 South Third Street, Suite 285
Las Vegas, Nevada 89101
(702) 386-9529
(702) 382-9529
wgamage@gamagelaw.com
agamage@gamagelaw.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

FRANK TADDEO; AMY TADDEO;                )
ABBACLE, LLC, a Nevada limited-liability )
company; MICHAEL ABROMOWITZ;             )
FRANKLIN AINSWORTH; ASUNCION             )
AINSWORTH; JOE ALITIEM; EDMON            )
ALKURGI; DAVID I. ALPAN; JIRI            )
AMBROZ; KRISTEN GRANGER-ASTE;            )   Case no.: 2:08-cv-01463-KJD-RJJ
HORACIO AVELINO; DARIAN AVELINO;         )
SANDAR AYOUB; MARY BAIJAN;               )
STEPHEN BARGERON; CONSTANCE              )
BARGERON; AZAD BAYZAEE; MANIJEH          )   **SECOND AMENDED COMPLAINT**
BAYZAEE; SHERI S. BEBB; DORIT BEN-       )
EZER; NAREMAN BENJAMIN; SARGON           )
BENJAMIN; SHARON BLOOM, Trustee, on      )
behalf of THE BLOOM TRUST; TREVOR L.     )
BOOTHE; DARREN BOUTON; CARTER            )
BOUTON; HARLEE CARTER; LANA              )
CARTER; JOHN BOWEN; MATHEW               )
BOWLES; MAVERICK REAL ESTATE#1,          )
LLC, a Nevada liability company;         )

1

1  MAVERICK REAL ESTATE#3, LLC, a          )
   Nevada limited-liability company; CURTIS R.  )
2  BRANOM; HARRY BROWN III; PATRICIA        )
   S. BROWN; KEITH BOWN; PAMELA            )
3  GRAYSON BROWN; GARY BRUDNER;             )
   JEANNE CALIGURI; JAY CAMPBELL;           )
4  JEFFREY CARSON; MARIAN CARSON;           )
   HELEN CHANG; KEVIN CHANG;                )
5  ANTOINE CHAYA; JU-CHIN CHANG;            )
   CHEN-CHUNG CHAO; DA-CHIA CHAO;           )
6  YAT CHUEN CHO; CHRISTINE CHOO;           )
7  DANIEL CHOO; THOMAS CHU; RICHARD         )
   A. COHEN; SHARON COHEN; LAURA            )
8  COLBERT; RICHARD A. COLEN; DENNIS        )
   CORNING; DEBRA CORNING; JUDGE W.         )
9  COOLEY; BRUCE COUTURIER;                 )
10 ELEANOR COUTURIER; NIVIA M. CRUZ;        )
   MATTHEW CUA; DEEBEE, LLC, a Nevada       )
11 limited-liability company; RAY DAKAK;    )
   SANDRA DAKAK; CARLOS DAVALOS;            )
12 KRISTI K. DAVALOS; DARRELL               )
   DECOSTA; ANTHONY DELFAVERO;              )
13 ROBERT DONALDSON; DIANNE D.              )
14 DONALDSON; MICHAEL DYE; E N K            )
   INVESTMENTS, an Illinois limited-liability  )
15 company; ROBERT EATON; SHAHIN            )
   EDALATDJU; NASILA EDALATDJU;             )
16 CATHERINE EGAN; AVERY ELLIS;             )
17 NITZA ELLIS; NOAH ELLIS; ROBERT          )
   ELLIS; STEVEN EMBERLAND; LORI ANN        )
18 EMBERLAND; DANETTE ESLIN;                )
   ROMULO V. ESPARRAGO; ROBERT              )
19 EVANS; DOLUE EZEANOLUE, M.D.;            )
   EZIAGU PROPERTIES, LLC, a Nevada         )
20 Limited Liability Company; JOSEPH FARIS;  )
21 MARLITO FAVILA; INA T.W. FENG;           )
   JOERG FERCHAU; CAROL FERCHAU;            )
22 SALLY FITZHENRY; RONALD A. FLATE;        )
   ROBERT FLORES; ALLESSIO                  )
23 FORACAPPA; FOREST EQUITY GROUP,          )
   LLC; CHARLES W. FOSTER, III and          )
24 LAVERNE C. FOSTER, Trustees, on behalf   )
25 of FOSTER 1994 FAMILY TRUST;             )
   RONALD FROMAN; NANCY FROMAN;             )
26 GILDA A. FRUKTOW; CHANG C. GAN;          )
   CARINA GARCIA; KENT GARRITY;             )
27 MARK GELHAUS; BECKY L. GLASS;            )
   AMY C. GLASS; JANAINE GONCALVES;         )
28 ANGELA GONCALVES; BARBARA                )

HAMMER; MIKE HAMMER; MARY              )
HANSEN; TINA HAYASHI; CHARLES          )
HEGELHEIMER; DONNA HEGELHEIMER;        )
VICTOR HELDT; MARY HELDT; ROY          )
HILDEBRAND; RHONDA HU; MICHAEL         )
HUGHES; LORALIE HUNT; MEHRAN           )
JAVID; DEIRDRE JAVID; RONALD           )
JOHNSON; JULEN LLC, a Nevada Limited   )
Liability Company; NANCY KADOWAKI;     )
JEFFREY KAMLER; JUDITH KAMLER;         )
MARK T. KAN; BARRY J. KAPLAN;          )
DAVID KASUBOWSKI; ADNAN                )
KHAMOO; RITA KHAMOO; LIEU KIET;        )
LARRY KOPELMAN; PAULA                  )
KOPELMAN; NOEMI HINAJON; RAGHID        )
B. KOSA; BASIL KOSA; NASIR KOSA;       )
RAAD KOSA; MAHA KOSA; WISAM B.         )
KOSA; SUSAN KRAUJALIS; LTP, LLC, an    )
Illinois Limited Liability Company;  ESTELA )
LANEZ; DONATO LANEZ; JASON             )
LAZAR; JOE LAZZARA; HOWARD LIN;        )
LORI LAZZARA; JOYCE LAZZARA;           )
CRAIG LEMKE; COLVIN LENNON, SR.;       )
LOREN LEVITAN; DIVINITY LIBBY; LEE     )
LORENZEN; DAVID LUJAN;; CAROLINE       )
LUJAN; CASSI LUXA; BRETT M.            )
MACAULEY and HONGMEI YU                )
MACAULEY, Trustees of the MACAULEY     )
FAMILY LIVING TRUST; ALBERT MAK;       )
DAVID H. MANCILLA; LYNDSAY N.          )
MANCILA; JAN MANDEL; LAURA             )
MANLEY; DERRICK MAR; JOHN              )
MARTIN; MICHELLE MARTIN; TRENT         )
MARTIN; DALE MASON; JAIME MATEO;       )
DEBRA MATEO: SAIID MATTI; RICHARD      )
F. MCCARTNEY; MARK MEAD; GINA          )
MELLO; MERIDIAN RESORTS, LLC, a        )
Nevada Limited Liability Company; MARCO )
MENDOZA; RAMON MICHAEL; ROBERT         )
K. MILLER; MICHAEL MOGERMAN;           )
MYLINE MOGERMAN; HOWARD                )
MOORE; GUSTAVO MONTEALEGRE;            )
JUDY M. MULLEN, Trustee of the JUDY M. )
MULLEN TRUST; ANDREW MYERS;            )
JANINE NASTASUK; KANT NG;              )
KREISLER NG; DAQING NIE; DENNIS        )
NOTO; BARBARA NOTO; RICHARD            )
O'BRINGER; GREGORY O'KEEFE;            )
DUANE OVERTURF; CATHERINE              )

OVERTURF; PAUL PETERSON; )
DENNETTE PETERSON; MARY ANNE )
PICKULUS, Trustee of the MARY ANNE )
PIKULUS REVOCABLE TRUST; JUSTIN )
POHN; MURRY PORTNOFF; CHRISTINE )
PORTNOFF; GARY POWER; CINDY )
POWER; STEVEN REDLICH; ROBERT )
REYNOLDS; VATINEE )
ROONGRUANGYOT; DONAL RYAN; )
CHIZU SAKOTA; HIROSHI SAKOTA; )
AURELIO SALADINO; GEORGE )
SALMAN; DREW SCHATZMAN; RODICA )
SCHILERU; GRETCHEN M. SCHREIBER; )
ANDREW O. SCHREIBER; MICHAEL )
SCHURER; LARRY SCHWARZE; )
VIRGINIA S. SEBASTIAN and NARCISO B. )
SEBASTIAN, Trustees of the NARCISO B. )
SEBASTIAN AND VIRGINIA S. )
SEBASTIAN REVOCABLE LIVING )
TRUST; SACHIKO SHIGA; DANIEL P. )
SHIPP; SABAH H. SHOSHANI; LOREN )
SMITH; SNAP PROPERTIES, LLC, a )
Nevada Limited Liability Company; TERRY )
SOIFFER; TWANNA SOIFFER; REGINA M. )
STEWART; RICK ST. LAURENT; )
KIMBERLY ST. LAURENT; NINA M. )
SUGAMORI; SHELLY SUTHERLAND, )
Trustee of the SHELLY SUTHERLAND )
TRUST; JOYCE H. TAINO; JOSE I. TAN )
JR.; CELEDONIA P. TAN; TRACY )
THEISEN; JOE THOMAS; HABIB K. )
TUCKTUCK; GEORGE M. FARAH. )
AMANDA K. TURKO; ALI USAFEE; )
JENNIFER VALDEZ; ROVERT VANCE; )
SANDRA VILLETTI; ANTONIO )
VISCARDI; TIEN CHANG WANG, M.D. )
P.C.; CYNTHIA WEBER; SHANE )
WHILIDAL; EDWARD WHITE; WILLIAM )
W. WONG; BENJAMIN W. WONG; )
STEVEN WOOD; LUNG-CHOU YANG; )
XIAOHONG YIN; KEVIN YORK; RITA )
YOUNG; MARLA R. ZEMANEK; FAEEZ )
M. ZOURA; SUNDUS F. ZOURA; and ALL )
OTHERS SIMILARLY SITUATED, )
)
Plaintiffs, )
)
vs. )
)

4

AMERICAN INVSCO CORPORATION, a
Delaware Corporation; KOVAL FLAMINGO,
LLC, a Nevada limited-liability company; 250
E. FLAMINGO RD, INC., a Michigan
Corporation; KOVAL FLAMINGO
INVESTORS, LLC, a Michigan Limited
Liability Company; KOVAL FLAMINGO
HOLDINGS, LLC; a Michigan Limited
Liability Company; SEG NEVADA
CONSULTANTS, INC., a Nevada
corporation; SEG NEVADA MEMBERS,
LLC, a Nevada limited-liability company;
CONDOMINIUM RENTAL SERVICES,
INC., an Illinois corporation; AMERICAN
INVSCO REALTY, INC., a Nevada
corporation; MERIDIAN PRIVATE
RESIDENCES CH, LLC, a Michigan limited-
liability company; MERIDIAN
CONDOMINIUM RENTAL SERVICES,
INC., a Nevada corporation; CONAM
MANAGEMENT CORPORATION, a
California Corporation; EXECUTIVE
LOCATIONS, LLC, a Nevada limited-liability
company; BERSHIRE REALTY, INC., a
Nevada Corporation; ERIC LYNN, an
individual; FCC MORTGAGE
CORPORATION, a Nevada Corporation;
MAC REALTY, INC., a Nevada Corporation;
REALTY SERVICES, INC.; NEVADA
MAINTENANCE, INC., A Nevada
Corporation; MICHAEL MACKENZIE, an
individual; DALE CAMPBELL, an individual;
REBEKAH DESMET, an individual; RON
ALDINGER, an individual; NICK
GOULETAS, an individual; STEVEN
GOULETAS, an individual;  SCOTT OELKE,
an individual; NICK BAIRD, an individual;
SHAYNA GOLDSTEIN, an individual;
MICHAEL ZINK, an individual; INVSCO
GROUP, LTD., an Illinois corporation;
MICHAEL FISH, and individual; MARK
GOLDSTEIN, an individual; MICHAEL
BENCH, an individual; BRUCE SEYBURN,
an individual; NICK REYES, an individual;
NICK REYES APPRAISALS; PEAK
APPRAISALS; A NEVADA APPRAISALS;
THE APPRAISAL TEAM; ALL WESTERN
MORTGAGE, INC., a Nevada corporation;

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AMTRUST BANK, f/k/a OHIO SAVINGS )
BANK, FSB; ASC, a wholly owned subsidiary )
of WELLS FARGO BANK N.A.; AURORA )
LOAN SERVICES, a Delaware Limited )
Liability Company; BANK OF AMERICA, )
N.A., a National Association; BANK UNITED )
FINANCIAL CORPORATION, a Florida )
Corporation; CITIBANK, N.A., a National )
Association; CMG MORTGAGE, INC., a )
California Corporation; COLONIAL )
SAVINGS, F.A.; CONSECO FINANCE )
CORPORATION, a Delaware Corporation, )
f/k/a GREEN TREE FINANCIAL; )
COUNTRYWIDE HOME LOANS, INC., a )
New York corporation; DECISION ONE )
MORTGAGE COMPANY, LLC, a Nevada )
foreign Limited Liability Company; DESERT )
VALLEY MORTGAGE COMPANY, LLC, a )
Nevada foreign Limited Liability Company; )
DRAPER & KRAMER MORTGAGE )
CORPORATION; a Delaware Corporation; )
EMC, a wholly owned subsidiary of JP )
MORGAN CHASE BANK, N.A., a National )
Association; FIRST HORIZON HOME LOAN )
CORPORATION, a division of FIRST )
HORIZON NATIONAL CORPORATION, a )
Tennessee Corporation; GMAC MORTGAGE )
CORPORATION, a Pennsylvania )
Corporation; GREENPOINT MORTGAGE )
FUNDING, INC. a New York corporation; )
HOMECOMINGS FINANCIAL, LLC, a )
Delaware Limited Liability Company; )
INDYMAC FEDERAL BANK, FSB, a )
California Corporation; JP MORGAN CHASE )
BANK, N.A., a National Association; )
LITTON LOAN SERVICING, LP, a Delaware )
Corporation; MERIDIAS CAPITAL, INC., a )
Nevada Corporation; MIDLAND )
MORTGAGE, an Oklahoma Corporation; )
MORTGAGE ELECTRONIC )
REGISTRATION SYSTEM (MERS); a )
Virginia Corporation; MORTGAGE IT, INC., )
a New York Corporation; NATIONAL CITY )
MORTGAGE, an Ohio Corporation; )
NORTHERN PACIFIC MORTGAGE )
COMPANY, a Nevada Corporation; OAK )
STREET MORTGAGE, LLC, a Delaware )
Limited Liability Company; PHH )
MORTGAGE CORPORATION, a New Jersey )

Corporation; PLAZA HOME MORTGAGE, a )
California Corporation; PMAC LENDING )
SERVICES, INC., a California Corporation; )
REALTY MORTGAGE CORPORATION, a )
Mississippi Corporation; RECON TRUST )
MORTGAGE CO. NA, a National )
Association; REGIONS FINANCIAL )
CORPORATION, a Delaware Corporation; )
RESIDENTIAL MORTGAGE CAPITAL, a )
California Corporation; SFG MORTGAGE, )
LLC, an Arizona Limited Liability Company; )
SILVER STATE MORTGAGE, a Nevada )
Limited Liability Company; STEARNS )
LENDING, INC., a California corporation; )
TAYLOR BEAN & WHITAKER )
MORTGAGE CORPORATION, a Florida )
corporation; UNITED FINANCIAL; US )
BANK N.A., a National Association; )
WASHINGTON MUTUAL BANK FA, a )
subsidiary of JP MORGAN CHASE BANK, )
N.A., a National Association; WELLS )
FARGO BANK, a National Association; )
WILSHIRE CREDIT CORPORATION, a )
Nevada Corporation; WMC MORTGAGE )
CORPORATION, a California Corporation; )
RECONTRUST COMPANY, a Nevada )
Corporation; COMMONWEALTH LAND )
TITLE INSURANCE COMPANY; FIRST )
AMERICAN TITLE; FIDELITY NATIONAL )
TITLE AGENCY OF NEVADA, INC, a
Nevada Corporation; and, DOES 1-1000; and
ROE ENTITIES 1-1000,

Defendants.

---

# SECOND AMENDED COMPLAINT

Plaintiffs, above-named, by and through their undersigned attorneys, hereby complain against Defendants, alleging as follows:

## NATURE OF THE ACTION

This is an action regarding title to real property for the fraudulent sales of over six hundred condominium units at the Meridian Condominium Complex by Defendants and their

7

affiliated persons and entities. The allegations presented include, but are not limited to, claims for Fraud in the Inducement, Securities Fraud, and Predatory Lending Practices.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial.

## JURISDICTION

The claims are brought and Jurisdiction is conferred to this Court pursuant to 28 U.S.C. § 1332(d)(2) as this matter is a class action with an amount in controversy exceeding $5,000,000.00.

## JURISDICTION FOR STATE CAUSES OF ACTION
### (State Causes of Action)

Jurisdiction for the state law claims against all Defendants is pursuant to statutes of the State of Nevada and is conferred upon this Court by the doctrine of pendent jurisdiction pursuant to 28 U.S.C. § 1367.

## VENUE

Venue is proper in the District of Nevada pursuant to 28 U.S.C. § 1391(b) as the claims arose in this district and involve real property located within this district.

## THE PARTIES

1.      The following Plaintiffs are residents of the State of Arizona and owners of units in the Meridian Private Residences condominium project situated on 210, 220, 230, 260, and 270 E. Flamingo Road, Las Vegas, Nevada (hereinafter "Meridian Condominiums"), as follows:

|   |   |   |
|---|---|---|
| a. | Joe Alitiem | 7-424 |
| b. | Charles and Donna Hegelheimer | 7-128, 7-307 |
| c. | Jan Mandel | 1-406 |
| d. | Nareman and Sargon Benjamin, | 6-302 |
| e. | Gregory O'Keefe | 6-436 |
| f. | Mary Ann Pikulus Rev. Trust | 1-210 |
| g. | Aurelio Saladino | 3-107, 6-319 |
| h. | Jennifer Valdez | 3-322 |
| i. | Steven Wood | 6-221 |

2.     The following Plaintiffs are residents of the State of California and owners of units in Meridian Condominiums as follows:

|     |     |     |
| --- | --- | --- |
| a. | David I. Alpan | 7-103 |
| b. | Jiri Ambroz | 2-435 |
| c. | Horacio & Darian Avelino | 7-127 |
| d. | Sandar Ayoub | 6-322 |
| e. | Dorit Ben-Ezer | 1-104 |
| f. | Sharon Bloom Trust | 7-221 |
| g. | Darren C. Bouton & Harlee and Lana Carter | 3-301 |
| h. | John Bowen and Gina Mello | 6-406 |
| i. | MAVERICK REAL ESTATE#1, LLC, | 1-225 |
|    | a Nevada Limited Liability Company; (Bowles) |  |
| j. | MAVERICK REAL ESTATE#3, LLC, | 3-115 |
|    | a Nevada Limited Liability Company (Bowles) |  |
| k. | Mathew Bowles | 3-315, 7-416 |
| l. | Harry J. Brown III | 1-213, 3-423 |
| m. | Harry J. Brown III and Patricia S. Brown | 1-214 |
| n. | Jay Campbell | 6-402 |
| o. | Jeffrey & Marian Carson, Jaime & Debra Mateo | 2-132 |
| p. | Antoine K Chaya | 6-311 |
| q. | Chen-Chung Chao and Da-Chia Chao | 7-305 |
| r. | Yat Chuen Cho and Rita Young | 7-232 |
| s. | Thomas Chu | 3-220 |
| t. | Sharon Cohen | 3-420 |
| u. | Laura Colbert | 6-303 |
| v. | Bruce & Eleanor Couturier | 6-323, 7-213 |
| w. | Nivia M. Cruz | 3-124 |
| x. | Matthew Cua | 6-223 |
| y. | Carlos & Kristi M. Davalos | 7-436 |
| z. | Shahin Edalatdju | 6-306 |
| aa. | Steven & Lori Ann Emberland | 7-426 |
| bb. | Danette Eslin | 6-222 |
| cc. | Romulo V. Esparrago | 2-212 |
| dd. | Joseph Faris | 1-211, 7-316 |
| ee. | Joerg & Carol Ferchau | 7-233 |
| ff. | Ronald A. Flate | 3-203 |
| gg. | Robert Flores | 7-230 |
| hh. | Charles & Laverne Foster III, Trustees of the | 6-232 |
|    | FOSTER 1994 FAMILY TRUST |  |
| ii. | Gilda A. Fruktow, | 1-115, 2-405 |
| jj. | Chang C. Gan, & Nina M. Sugamori, | 6-405, 3-313 |
| kk. | Carina Garcia | 3-228 |
| ll. | Mark Gelhaus | 2-327, 7-219 |
| mm. | Becky L. Glass, Amy C. Glass & Sandra Villetti | 6-117 |
| nn. | Tina Hayashi, Howard Lin, & Nancy Kadowaki | 2-415, 6-432 |
| oo. | Mark T. Kan, | 7-310 |
| pp. | Barry J. Kaplan | 1-420 |

| | | |
|---|---|---|
| qq. David Kasubowski | 6-208 | |
| rr.  Adnan & Rita Khamoo, Edmon Alkurgi | 1-209 | |
| & Mary Baijan | | |
| ss.  Maha Kosa | 6-105 | |
| tt.  Wisam Kosa | 6-104 | |
| uu. Lieu Kiet | 1-433 | |
| vv.  Estela & Donato Lanez | 7-215 | |
| ww.        Colvin Sr. Lennon | 6-108 | |
| xx. Divinity Libby | 1-321, 1-127 | |
| yy. David & Caroline Lujan | 1-206 | |
| zz. Brett M. & Hongmei Yu Macauley, | 7-425 | |
| Trustees of the MACAULEY FAMILY | | |
| LIVING TRUST | | |
| aaa. Albert Mak, & Ina Feng | 1-329, 7-105 | |
| bbb.        Laura Manley | 1-228 | |
| ccc.        Richard F. McCartney, | 7-422 | |
| ddd.        Mead, Mark | 2-115, 1-224, 3-221, 6-125, 7-121, 7-225, 7-227 | |
| eee. Judy M. Mullen, Trustee of the | 7-419 | |
| JUDY M. MULLEN TRUST | | |
| fff.  Andrew Myers, & Shane Whilidal, | 2-134 | |
| ggg. Duane & Catherine Overturf | 1-110 | |
| hhh. Paul & Danette Peterson | 2-421 | |
| iii.   Robert Reynolds | 1-319 | |
| jjj.   Vatinee Roongruangyot, | 2-222, 7-203 | |
| kkk. George Salman | 6-234 | |
| lll.  Rodica Schileru | 1-417 | |
| mmm.        Gretchen M. & Andrew O. Schreiber, | 6-315 | |
| nnn. Michael Schurer | 7-209 | |
| ooo.        Larry Schwarze | 1-223, 1-134 | |
| ppp. Sachiko Shiga | 3-230 | |
| qqq. Rick & Kimberly St. Laurent | 1-129 | |
| rrr.     Shelly Sutherland, Trustee of the | 1-323 | |
| SHELLY SUTHERLAND TRUST | | |
| sss.     Jose I. & Celedonia P.Tan Jr. | 7-125, 7-332 | |
| ttt.     Joyce H. Taino | 1-221 | |
| uuu.   Ali Usafee, | 1-326, 3-125 | |
| vvv.   Forest Equity Group LLC (Lung-Chou Yang) | 7-326 | |
| www. Kevin York | 6-115 | |
| xxx.     Maria R. Zemanek | 7-111, 7-124, 3-126 | |
| yyy.     Faeez M. & Sundus F. Zoura | 6-235, 7-234 | |
| zzz.     Keith Bown & Pamela Grayson Brown | 7-132 | |
| aaaa.     Nasila Edalatdju | 1-226, 6-336 | |
| bbbb.     Anthony Defavero | 3-235 | |
| cccc.     Janine Goncalves | 2-118 | |
| dddd.     Angela Goncalves | 7-116 | |
| eeee.     Lee Lorenzen | 3-123, 3-325 | |
| ffff.     Gustavo Montealegre | 2-120 | |

3.    The following Plaintiffs are residents of the State of Colorado and owners of units in Meridian Condominiums as follows:

| a. | Daniel P. Shipp | 6-110, 6-207 |
| b. | Amanda K. Turko, | 1-402, 6-111 |

4.    The following Plaintiff is a resident of the District of Columbia and owner of a unit in Meridian Condominiums as follows:

| a. | Trevor L. Boothe | 1-230 |

5.    The following Plaintiffs are residents of the State of Florida and owners of units in Meridian Condominiums as follows:

| a. | Ray and Sandra Dakak | 7-235 |
| b. | Janine Nastasuk & Howard Moore | 1-123 |
| c. | Terry Soiffer | 3-135 |
| d. | Twanna Soiffer | 3-135 |
| e. | Ronald Froman | 3-135 |
| f. | Nancy Froman | 3-135 |

6.    The following Plaintiffs are residents of the State of Georgia and owners of units in Meridian Condominiums as follows:

| a. | Stephen & Constance Bargeron | 2-110 |
| b. | Sheri S. Bebb | 1-432, 3-212 |
| c. | Robert Evans | 1-315 |

7.    The following Plaintiffs are residents of the State of Illinois and owners of units in Meridian Condominiums as follows:

| a. | Azad Bayzaee | 3-333 |
| b. | Christine & Daniel Choo | 7-337 |
| c. | Richard A. Colen | 6-129 |
| d. | Robert & Dianne D. Donaldson, | 1-229 |
| e. | E N K Investments, LLC (Robert Eaton) | 3-215 |
| f. | Marlito Favila | 7-211 |
| g. | Alessio Foracappa | 7-129 |
| h. | Kent Garrity | 7-130 |
| i. | Barbara Hammer | 6-130 |
| j. | Mary Hansen & Manijeh Bayzaee | 1-425 |

k.  LTP, LLC (Roy Hildebrand & Susan Kraujalis)    7-217
l.  Deirdre Javid    3-101
m.  Mehran Javid    6-215
n.  Joe Lazzara & Dale Mason    6-321
o.  Loren Levitan    6-102
p.  Cassie Luxa    2-311
q.  Michelle Martin    3-208
r.  Ramon Michael    1-215
s.  Robert K. Miller    2-319
t.  Murry & Christine Portnoff    2-128
u.  Steve Redlich    3-127
v.  Joe Thomas    1-434
w.  Edward White    2-141
x.  William W. & Benjamin W. Wong    2-104

8.    The following Plaintiffs are residents of the State of Kentucky and owners of units in Meridian Condominiums as follows:

a.  Michael Hughes    2-226, 7-226
b.  Justin Pohn    2-136
c.  Donal Ryan    2-334
d.  Loren Smith    2-403

9.    The following Plaintiffs are residents of the State of Massachusetts and owners of units in Meridian Condominiums as follows:

a.  Loralie Hunt    1-108
b.  Lori & Joyce Lazzara    3-417

10.    The following Plaintiff is a resident of the State of New Jersey and owns a unit in Meridian Condominiums as follows:

a.  Catherine Egan    6-320

b.  David & Lyndsay Mancilla    6-113

11.    The following Plaintiffs are residents of the State of Nevada and owners of units in Meridian Condominiums as follows:

a.  ABBACLE, LLC, (Michael Abromowitz)    2-202
b.  Franklin & Asuncion Ainsworth    7-432
c.  Kristen Granger    2-125

d. Curtis R. Branom — 6-106
e. Jeanne Caliguri — 6-118
f. Julen, LLC (Helen, Kevin & Ju-Chin Chang) — 1-321, 1-313, 1-312, 7-412
g. Judge W. Cooley — 3-216
h. Michael Dye — 7-210
i. EZIAGU Properties LLC — 6-332, 7-421
j. Sally Fitzhenry — 2-131, 3-416, 7-335
k. Mike Hammer — 1-118
l. Ronald Johnson — 2-419
m. Noemi Hinajon — 3-434
n. Jason Lazar — 3-425
o. DEEBEE, LLC (Dennis & Barbara Noto) — 1-413, 1-414
p. Richard O'Bringer — 3-204, 3-205
q. Drew Schatzman — 1-306
r. Virginia S. & Narciso B. Sebastian, Trustees of — 6-114
  The NARCISO B. SEBASTIAN AND VIRGINIA S.
  SEBASTIAN REVOCABLE LIVING TRUST
s. Sabah H. Shoshani — 3-330
t. Tracy Theisen — 3-422
u. Habib K. Tucktuck & George M. Farah — 3-432
v. Vance, Robert — 7-403, 7-404
w. Wang, Tien Chang M.D. P.C. — 1-132, 7-323
x. Cynthia Weber — 2-123
y. Xiaohong Yin — 7-319
z. Marco Mendoza — 6-231
aa. Michael Mogerman — 2-122
bb. Myline Mogerman — 2-122
cc. John Martin — 7-303
dd. Kant Ng — 6-307
ee. Kreisler Ng — 6-307
ff. Richard A. Cohen — 6-312, 1-136, 1-113, 1-102, 2-130, 2-116, 2-109, 2-108, 2-103, 2-232, 2-211, 2-335, 2-316, 2-417, 3-119, 3-102, 3-236, 6-121, 6-216
gg. Meridian Resorts, LLC, — 6-312, 1-136, 1-113, 1-102, 2-130, 2-116, 2-109, 2-108, 2-103, 2-232, 2-211, 2-335, 2-316, 2-417, 3-119, 3-102, 3-236, 6-121, 6-216
hh. Snap Properties LLC — 2-412
ii. Victor Heldt & Mary Heldt — 2-412
jj. Basil Kosa — 2-236
kk. Nasir Kosa — 6-205
ll. Raad Kosa & Saiid Matti — 7-205
mm. Raghid B. Kosa — 6-204
nn. Frank & Amelia Taddeo — 7-315

12.    The following Plaintiffs are residents of the State of New York and owners of units

13

in Meridian Condominiums as follows:

| | | |
|---|---|---|
| a. | Gary Brudner | 2-337 |
| b. | Jeffrey & Judith Kamler | 6-304 |
| c. | Avery Ellis | 2-313 |
| d. | Nitza Ellis | 2-313 |
| e. | Noah Ellis | 2-313 |
| f. | Robert Ellis | 2-313 |

13.    The following Plaintiff is a resident of the State of Ohio and owns a unit in Meridian Condominiums as follows:

| | | |
|---|---|---|
| a. | Trent Martin | 3-318 |

14.    The following Plaintiff is a resident of the State of Oregon and owner of a unit in Meridian Condominiums as follows:

| | | |
|---|---|---|
| a. | Dennis & Debra Corning | 1-116 |

15.    The following Plaintiff is a resident of the State of South Carolina and owner of units in Meridian Condominiums as follows:

| | | |
|---|---|---|
| a. | Larry Kopelman | 1-318, 3-334, 1-204 |
| b. | Paula Kopelman | 1-318, 3-334, 1-204 |

16.    The following Plaintiffs are residents of the State of Texas and owners of a unit in Meridian Condominiums as follows:

| | | |
|---|---|---|
| a. | Daqing Nie & Rhonda Hu | 6-209 |
| b. | Regina M. Stewart | 2-402 |

17.    The following Plaintiff is a resident of the State of Washington and owner of a unit in Meridian Condominiums as follows:

| | | |
|---|---|---|
| a. | Derrick Mar | 2-332 |
| b. | Gary and Cindy Power | 2-225 |

14

18.     The following Plaintiff is a resident of the State of Wisconsin and owner of a unit in Meridian Condominiums as follows:

a.  Craig Lemke                                   3-335

20.     The following Plaintiff is a citizen and resident of the country of Italy owning a unit in Meridian Condominiums as follows:

a.  Antonio Viscardi                             3-402

21.     The following Plaintiff is a citizen and resident of the country of Canada owning a unit in Meridian Condominiums as follows:

a.  Darrell Decosta                              2-422

22.     The following Plaintiff is a citizen and resident of the country of Japan owning a unit in Meridian Condominiums as follows:

a.  Chizu & Hiroshi Sakota                       6-132

23.     Defendant AMERICAN INVSCO CORPORATION is a Delaware corporation and Defendant INVSCO GROUP LTD. is an Illinois corporation (hereinafter collectively referred to as "INVSCO") are the developers of the Meridian Condominiums conversion project, and were involved in the building conversion and improvements, sales and management of the condominium units owned by Plaintiffs located in the Meridian Private Residences at 250 East Flamingo Road, Las Vegas, Nevada, whose principal place of business is, on information and belief, in Chicago, Illinois.

24.     Defendant MICHAEL FISH (hereinafter "FISH") is a resident of Illinois and the Chief Operations Officer for AMERICAN INVSCO; the Vice President of SEG NEVADA CONSULTANTS, INC.; a Managing Member and Vice president for KOVAL FLAMINGO, LLC;

15

and, Vice President for CRS, INC.. In these capacities, FISH promulgated policy and upon information and belief established, furthered, and participated in the fraud perpetrated on the Plaintiffs as alleged herein.

25.     Defendant MICHAEL BENCH (hereinafter "BENCH") is a resident of Illinois and an Officer of AMERICAN INVSCO. In this capacity, BENCH promulgated policy and upon information and belief established, furthered, and participated in the fraud perpetrated on the Plaintiffs as alleged herein.

26.     Defendant KOVAL FLAMINGO, LLC (hereinafter "KOVAL") is a Nevada limited-liability company and was organized to shield INVSCO from its potential creditors and from liability from its illicit dealings, and KOVAL held title to the property now known as the Meridian Condominiums and served as its developer and sales manager, and was the organizer and its members/employees served on the Homeowners Association, of the Meridian as well as contracted directly with some of the owners to lease back the sold units.  KOVAL's principal place of business is, on information and belief, in Clark County, State of Nevada.

27.     Defendant SEG NEVADA CONSULTANTS, INC. is a Nevada corporation organized as an entity to shield INVSCO from its creditors and from liability from its illicit dealings, and was a managing member of Defendant KOVAL and SEG NEVADA MEMBERS, LLC, and whose principal place of business is, on information and belief, in Clark County, State of Nevada.

28.     Defendant SEG NEVADA MEMBERS, LLC is a Nevada limited-liability company organized to shield INVSCO from its creditors and from liability for its illicit dealings, and is a managing member of KOVAL, and whose principal place of business is, on information and belief, in Clark County, State of Nevada.

29.     Defendant 250 EAST FLAMINGO ROAD, INC (hereinafter "250 EAST

FLAMINGO") is a Michigan Corporation which does business in Clark County, Nevada. 250 EAST FLAMINGO owns SEG NEVADA MEMBERS, LLC and in this capacity, 250 EAST FLAMINGO promulgated policy and upon information and belief established, furthered, and participated in the fraud perpetrated on the Plaintiffs as alleged herein.

30.     Defendant BRUCE SEYBURN (hereinafter "SEYBURN") is a resident of Michigan and is the sole officer controlling 250 EAST FLAMINGO ROAD, INC. 250 EAST FLAMINGO ROAD, INC. owns SEG NEVADA MEMBERS, LLC. In this capacity, SEYBURN promulgated policy and upon information and belief established, furthered, and participated in the fraud perpetrated on the Plaintiffs as alleged herein.

31.     Defendant KOVAL FLAMINGO INVESTORS, LLC (hereinafter "KFI") is a Michigan Limited Liability Company and has as its principle place of business Clark County, Nevada. In that capacity was a managing member of Koval Flamingo. KFI promulgated policy and upon information and belief established, furthered, and participated in the fraud perpetrated on the Plaintiffs as alleged herein.

32.     Defendant KOVAL FLAMINGO HOLDINGS (hereinafter "KFH") has as its principle place of business Clark County, Nevada. In that capacity was a managing member of Koval Flamingo. KFH promulgated policy and upon information and belief established, furthered, and participated in the fraud perpetrated on the Plaintiffs as alleged herein.

33.     Defendant CONDOMINIUM RENTAL SERVICES, INC. (hereinafter "CRS") is an Illinois corporation who has contracted with most of the owners to pay guaranteed rent, assessments and taxes until March 2010, and was organized to shield INVSCO from its creditors and from liability from its illicit dealings, and was involved with the rental of the units owned by Plaintiffs herein. CRS's principal place of business is, on information and belief, in Clark County, State of Nevada.

34.     Defendant MICHAEL GOLDSTEIN, (hereinafter "GOLDSTEIN") is a resident of Illinois and President and Treasurer of CRS. In that capacity, GOLDSTEIN promulgated policy and upon information and belief established, furthered, and participated in the fraud perpetrated on the Plaintiffs as alleged herein.

35.     Defendant REALTY SERVICES, INC. (hereinafter "REALTY SERVICES "), has as its principle place of business Clark County, Nevada and was organized to shield INVSCO from its creditors and liability from its illicit dealings, and was involved in the sale and leaseback of the condominium units held by Plaintiffs herein. STEVEN GOULETAS is the sole officer for this corporation and in this capacity promulgated policy and upon information and belief established, furthered, and participated in the fraud perpetrated on the Plaintiffs as alleged herein.

36.     Defendant AMERICAN INVSCO REALTY INC. (hereinafter "REALTY"), is a Nevada corporation organized to shield INVSCO from its creditors and liability from its illicit dealings, and was involved in the sale and leaseback of the condominium units held by Plaintiffs herein.

37.     Defendant MERIDIAN PRIVATE RESIDENCES CH, LLC (hereinafter "PRIVATE RESIDENCES"), is a Michigan limited-liability company and is affiliated with INVSCO, and whose managing member is believed to be legal counsel to INVSCO, and was involved in the sales of hotel rentals and had drafted leases for the illegal use of the units, and leased Plaintiffs' condominium units in violation of the Clark County laws and ordinances. PRIVATE RESIDENCES' principal place of business is, on information and belief, in Clark County, State of Nevada.

38.     Defendant MERIDIAN CONDOMINIUM RENTAL SERVICES, INC. is a Nevada Corporation organized to shield INVSCO and PRIVATE RESIDENCES from its creditors and from liability from its illicit dealings, and took part in the illegal rental of Meridian Condominium

units including those owned by Plaintiffs.  Said corporation's principal place of business is, on information and belief, in Clark County, State of Nevada.

39.    Defendant EXECUTIVE LOCATIONS, LLC is a defunct Nevada limited liability company in which Defendant ERIC LYNN was a managing member, and was instrumental in the illegal rental of the condominium units owned by Plaintiffs, and its principal place of business is or was, on information and belief, in Clark County, State of Nevada.

40.    Defendant BERKSHIRE REALTY, INC. (hereinafter "BERKSHIRE"), is a Nevada Corporation with its principle place of business as Clark County, Nevada.

41.    Defendant ERIC LYNN (hereinafter "LYNN") actively participated and was instrumental in the illegal rental of Meridian Condominium units such as those owned by Plaintiffs herein and is, on information and belief, a resident of Clark County, State of Nevada.

42.    Defendant MAC REALTY, INC. (herein "MAC REALTY") is a Nevada Corporation organized to shield INVSCO, PRIVATE RESIDENCES and MICHAEL MACKENZIE from its creditors and from liability from its illicit dealings, and took part in the illegal rental of Meridian Condominium units including those owned by Plaintiffs. Said corporation's principal place of business is, on information and belief, in Clark County, State of Nevada.

43.    MICHAEL MACKENZIE (hereinafter "MACKENZIE") is an officer and Senior Vice President and agent of INVSCO, and was actively involved in the illicit sales and lease back program of INVSCO, was the broker of REALTY and MAC REALTY, INC. and was involved in the sale of the Meridian Condominium units and in the illegal operation of a hotel, and mismanaged and negligently operated the Home Owners Association as further stated herein.  MACKENZIE is or was doing business in Clark County, State of Nevada.

44.    Defendant NEVADA MAINTENANCE, INC. (hereinafter "NMI"), is a Nevada

Corporation organized to shield INVSCO from its creditors and liability and upon information and belief from its illicit and fraudulent scheme surrounding the sales of furniture packages to Plaintiffs as alleged herein. STEVEN GOULETAS is the sole officer for this corporation and in this capacity promulgated policy and upon information and belief established, furthered, and participated in the fraud perpetrated on the Plaintiffs as alleged herein.

45.    CONAM MANAGEMENT CORPORATION (hereinafter "CONAM") is a California Corporation doing business in Clark County, State of Nevada and was the manager of the Meridian Condominium units.

46.    Defendant DALE CAMPBELL (hereinafter "CAMPBELL") is, on information and belief, legal counsel or part of the law firm who was legal counsel to INVSCO and the managing member of PRIVATE RESIDENCES, and was instrumental in the promulgation of the leases for an illegal use, and illegally operated a hotel using the units owned by Plaintiffs. CAMPBELL is or was doing business in Clark County, State of Nevada.

47.    Defendant REBEKAH DESMET (hereinafter "DESMET") is, on information and belief, a resident of Clark County, State of Nevada who participated and carried out on behalf of other Defendants the wrongdoings alleged herein.

48.    STEVEN E. GOULETAS (hereinafter "S. GOULETAS") is on information and belief a resident of Illinois and is doing business in Clark County, State of Nevada.

49.    NICHOLAS GOULETAS (hereinafter "N. GOULETAS") is on information and belief a resident of Illinois and is doing business in Clark County, State of Nevada.

50.    RONALD ALDINGER is, on information and belief a resident of Nevada and is doing business in Clark County, State of Nevada.

51.    SCOTT OELKE is, on information and belief a resident of Nevada and is doing business in Clark County, State of Nevada.

52.     NICK BAIRD is, on information and belief a resident of Illinois and is doing business in Clark County, State of Nevada.

53.     SHAYNA GOLDSTEIN is, on information and belief a resident of Nevada and was doing business in Clark County, State of Nevada.

54.     MICHAEL ZINK is, on information and belief a resident of Illinois and was an officer of Defendant CRS and was on the Homeowners' Association of the Meridian and doing business in Clark County, State of Nevada.

55.     FCC MORTGAGE CORPORATION (hereinafter "FCC") is a Nevada corporation doing business in Clark County, State of Nevada.

56.     NICK REYES APPRAISAL, CO. (hereinafter "NRA"), is a revoked Nevada corporation doing business in Clark County, State of Nevada.

57.     NICK REYES, (hereinafter "REYES") an individual is on information and belief a resident of the State of Nevada doing business in Clark County, State of Nevada.

58.     PEAK APPRAISALS (hereinafter "PEAK") is on information and belief a company whose principle place of business is in Clark County, State of Nevada.

59.     A NEVADA APPRAISAL SERVICE, INC. (hereinafter "NEVADA APPRAISAL") is a revoked Nevada Corporation doing business in Clark County State of Nevada.

60.     THE APPRAISAL TEAM (hereinafter "APPRAISAL TEAM") is, on information and belief, a company whose principle place of business is in Clark County State of Nevada.

61.     Lenders, ALL WESTERN MORTGAGE, INC., a Nevada corporation; AMTRUST BANK, f/k/a OHIO SAVINGS BANK, FSB; ASC, a wholly owned subsidiary of WELLS FARGO BANK N.A.; AURORA LOAN SERVICES, a Delaware Limited Liability Company; BANK OF AMERICA, N.A., a National Association; BANK UNITED FINANCIAL CORPORATION, a Florida Corporation; BANKFIRST, INC., a South Dakota Corporation; CITIBANK, N.A., a

21

National Association; CMG MORTGAGE, INC., a California Corporation; COLONIAL

SAVINGS, F.A.; CONSECO FINANCE CORPORATION, a Delaware Corporation, f/k/a GREEN

TREE FINANCIAL; COUNTRYWIDE HOME LOANS, INC., a New York corporation; .,

RECONTRUST COMPANY, a Nevada Corporation; RECONTRUST COMPANY, NA, a

National Association; DECISION ONE MORTGAGE COMPANY, LLC, a Nevada foreign

Limited Liability Company; DESERT VALLEY MORTGAGE COMPANY, LLC, a Nevada

foreign Limited Liability Company; DRAPER & KRAMER MORTGAGE CORPORATION; a

Delaware Corporation; EMC, a wholly owned subsidiary of JP MORGAN CHASE BANK, N.A., a

National Association; FIRST HORIZON HOME LOAN CORPORATION, a division of FIRST

HORIZON NATIONAL CORPORATION, a Tennessee Corporation; GMAC MORTGAGE

CORPORATION, a Pennsylvania Corporation; GREENPOINT MORTGAGE FUNDING, INC. a

New York corporation; HOMECOMINGS FINANCIAL, LLC, a Delaware Limited Liability

Company; INDYMAC FEDERAL BANK, FSB, a California Corporation; JP MORGAN CHASE

BANK, N.A., a National Association; LITTON LOAN SERVICING, LP, a Delaware Corporation;

MERIDIAS CAPITAL, INC., a Nevada Corporation; MIDLAND MORTGAGE, an Oklahoma

Corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEM (MERS); a Virginia

Corporation; MORTGAGE IT, INC., a New York Corporation; NATIONAL CITY MORTGAGE,

an Ohio Corporation; NORTHERN PACIFIC MORTGAGE COMPANY, a Nevada Corporation;

OAK STREET MORTGAGE, LLC, a Delaware Limited Liability Company; PHH MORTGAGE

CORPORATION, a New Jersey Corporation; PLAZA HOME MORTGAGE, a California

Corporation; PMAC LENDING SERVICES, INC., a California Corporation; QUANTUM

SERVICING CORPORATION, a Delaware Corporation; REALTY MORTGAGE

CORPORATION, a Mississippi Corporation; RECONTRUST COMPANY, a Nevada Corporation;

RECON TRUST MORTGAGE CO. NA, a National Association; REGIONS FINANCIAL

CORPORATION, a Delaware Corporation; RESIDENTIAL MORTGAGE CAPITAL, a California Corporation; SFG MORTGAGE, LLC, an Arizona Limited Liability Company; SILVER STATE MORTGAGE, a Nevada Limited Liability Company; STEARNS LENDING, INC., a California corporation; TAYLOR BEAN & WHITAKER MORTGAGE CORPORATION, a Florida corporation; UNITED FINANCIAL; US BANK N.A., a National Association; WASHINGTON MUTUAL BANK FA, a subsidiary of JP MORGAN CHASE BANK, N.A., a National Association; WELLS FARGO BANK, a National Association; WILSHIRE CREDIT CORPORATION, a Nevada Corporation; and, WMC MORTGAGE CORPORATION, a California corporation., are entities who have made loans secured by deeds of trusts on Plaintiffs' properties and said lenders have made said loans or purchased said loans secured by Plaintiffs' properties situated in Clark County, Nevada and are therefore doing business in Clark County, State of Nevada.

62.    COMMONWEALTH LAND TITLE INSURANCE COMPANY (hereinafter "Commonwealth") is, on information and belief, a company licensed to conduct escrow and title insurance business in Clark County State of Nevada.

63.    FIRST AMERICAN TITLE (hereinafter "First American") is, on information and belief, a company licensed to conduct escrow and title insurance business in Clark County State of Nevada.

64.    FIDELITY NATIONAL TITLE AGENCY OF NEVADA, INC, (hereinafter "Fidelity") a Nevada Corporation, is, on information and belief, a company licensed to conduct escrow and title insurance business in Clark County State of Nevada.

65.    The true names and capacities, whether partner, individual, corporate, associate or otherwise of the Defendants herein designated as DOES 1 - 1000 and ROE ENTITIES 1 - 1000 are unknown to Plaintiffs who, therefore, sue said Defendants by fictitious names. Plaintiffs allege that

each Defendant herein designated as a DOE individual or a ROE ENTITY is negligently, willfully, and contractually or otherwise legally responsible for the events and happenings herein referred to, and proximately caused injury and damages thereby to Plaintiffs as herein alleged.  Said Doe Defendants may also have made loans or financed Plaintiffs' purchase of properties and have an interest in the outcome of this lawsuit.  Plaintiffs will ask leave of the Court to amend this Complaint to insert the true names and capacities of such Defendants when same have been ascertained and will further ask leave to join said Defendants in these proceedings.

66.     Venue is appropriate in this Court because acts alleged herein occurred in Clark County, Nevada, and/or Defendants purposefully availed themselves of the opportunity to conduct business in Clark County, Nevada.

67.     Greater than two-thirds of the owners of said Meridian Private Residences Condominiums (herein "Meridian Condominiums") who were damaged by Defendants by their acts as stated herein are citizens of the State of Nevada or California; at least one Defendant as stated above is a citizen or an entity whose principal place of business is in the State of Nevada or California; and all principal injuries occurred within the State of Nevada; Plaintiffs are unaware of any preceding actions involving similar allegations or claims filed within three years prior to this action.

## CLASS ACTION ALLEGATIONS

68.     Plaintiffs above-named, bring this action on behalf of themselves and all persons who purchased condominium units at the Meridian Private Residences, Clark County, Nevada from in or around 2005 to in or around 2007.

69.     Plaintiffs are informed and believe and on that basis allege, that this class of persons consists of at least 512 unique owners of the Meridian Condominium units; with some potential class members owning more than one unit.

70.    The claims set forth in this Complaint are common to each and every member of the class at least to the issue of whether there was wrongdoing in the: (a)  sales and leaseback program sold to Plaintiffs;    (b)  use of Plaintiffs' funds deposited with the Homeowner's Association;  (c)  failure to account for the finances of the Homeowner's Association; (d)  default on said sales and leaseback program;    (e)    failure to comply with  securities laws and California Foreign Real Property registration statutes; and (f)  rescission of the sales and loan documents.

71.    Plaintiffs Amy Taddeo, Frank Taddeo, Mary Heldt, and Victor Heldt are proper representatives of this class of persons because, as will be more fully shown below, they are all members of the class described in Paragraph 69 above.   The claims that the Taddeos and Heldts are asserting in this Complaint are typical of the claims of all members of the class.   The claims of the Taddeos and Heldts are not subject to any unique defenses nor does any interest of these Plaintiffs in this litigation conflict with any other member of the class.

72.    Plaintiffs contend that the claims set out below are proper for certification as a class action under the provisions of Rule 23(a) and (b) of the Federal Rules of Civil Procedure.

## FACTS OF THE CASE

73.    In or about early 2005 and throughout 2006, Plaintiffs were informed of an investment opportunity regarding the Meridian Condominiums which had recently been acquired by INVSCO.

74.    On information and belief, INVSCO through KOVAL acquired the subject property which was in use as an apartment complex, and converted it into "Luxury Condominiums", as described by INVSCO.

75.    On information and belief, INVSCO acquired the Meridian complex for the purpose creating a hotel condominium complex from which they could extract substantial profits related to

the sales of individual condominium units.

76.     On information and belief, INVSCO coordinated business relations with, conspired with, and made agreements by and between INVSCO, FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, FCC, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK (sometimes also referred to as "INVSCO and their related Defendants") for the purpose of defrauding Plaintiffs by including but not limited too:

a.  Creating numerous business entities to shield, obscure, mask, obfuscate, inveigle, and misdirect any party seeking to assess liability against the Defendants for their fraudulent and unlawful activities;

b.  Creating numerous business entities to shield, obscure, mask, obfuscate, inveigle, and misdirect any party seeking to trace the funds taken pursuant to these fraudulent and unlawful activities;

c.  Establishing agreements, business relationships, and conspiracies for the sole purpose of facilitating the fraudulent and unlawful activities planned for the Meridian Condominium Complex.

d.  The creation of false or fraudulent appraisals to increase the price of the Meridian Condos above market value to facilitate their leaseback scheme;

e.  The creation of agreements to falsify and fraudulently change loan documents without the knowledge of Plaintiffs to facilitate the sale of Meridian Condominiums;

f.  To mask from Plaintiffs the transfer from escrow large amounts of funds to the leaseback companies to facilitate the payment of leaseback payments to Plaintiffs essentially by using Plaintiffs' own money borrowed from lenders;

26

g. To make false and fraudulent statements to induce Plaintiffs to purchase furniture for their condominium units to essentially turn the properties into hotel rooms;

h. To take Plaintiffs' money for the furniture packages and then not deliver said furniture packages and keep Plaintiff's payments for the furniture package; and,

i. Defendants promulgated this fraudulent scheme to sell condo hotel units to Plaintiffs without having first obtained the appropriate zoning and licensure to conduct such activities upon the premises even though they conveyed to Plaintiffs that they were zoned and licensed to conduct such activities.

77.    On information and belief, INVSCO began selling the condominiums before completing the renovations, promising each purchaser that INVSCO would complete renovations within a specified time period.

78.    INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, FCC, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK sold the above-identified units to Plaintiffs in the years 2005 to 2007.

79.    The specific units sold to Plaintiffs closed escrow on or about the dates listed in Exhibit "A" attached to this pleading.

80.    Upon information and belief INVSCO, FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, FCC, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE,

BAIRD, S. GOLDSTEIN, and ZINK artificially inflated the prices of the condominiums and, to induce sales, offered the Plaintiffs a "positive cash flow" lease back program.

81.    Defendants' lease back program was comprised of Defendants leasing the sold condominiums from Plaintiffs for two to three years at a fixed rent and paying for Plaintiffs' Home Owners Association fees and real property taxes.  Plaintiffs purchased their condominium units at a price range from a low of $232,000 to over $1,000,000.

82.    Upon information and belief, INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, FCC, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK fraudulently told plaintiffs that the amount of the leaseback payments would exceed the amount of their mortgage payments making the purchase of one or more condominium units feasible even though they had little or no income.

83.    Upon information and belief, INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK selected the financing method needed for Plaintiffs to qualify for one or more condominium units even though some had little or no income. These Defendants further required Plaintiffs to use only their preferred tile companies, their preferred escrow companies, and their preferred appraisal companies.

84.    Upon information and belief, Defendants predominantly used "stated loans" or "no document loans" to allow INVSCO, through its agents and subsidiaries including but not limited to

FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK to falsify the requisite level of income needed for bank underwriters to approve the Plaintiffs to purchase the condominium units.

85.     To facilitate the purchase of condominium units, INVSCO and other Defendants entered into agreements with preferred lenders to conduct financing for the future sales of all Meridian condominium units. These preferred lenders included FCC, UNITED FINANCIAL MORTGAGE, SILVER STATE MORTGAGE, COUNTRYWIDE, NATIONAL CITY, and WESTERN THRIFT AND LOAN.

86.     To facilitate the future purchase of condominium units, INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK entered into agreements with preferred Title Insurance and escrow companies to provide insurance and closing services for the sales of all condominium units. These preferred title insurance and escrow companies included COMMONWEALTH, FIRST AMERICAN, and FIDELITY.

87.     To facilitate the future purchase of condominium units, INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE,

BAIRD, S. GOLDSTEIN, and ZINK entered into agreements with preferred appraisal companies to conduct appraisal services for the sales of all condominium units. These preferred appraisal companies included NICK REYES APPRAISALS, NICK REYES, PEAK APPRAISALS, A NEVADA APPRAISAL SERVICE, and THE APPRAISAL TEAM.

88.    For the purposes of obtaining financing for the prospective buyers of units in the project, INVSCO, through its subsidiaries and agents including but not limited to DESMET, represented to Plaintiffs and Plaintiffs' lenders that the converted condominium units were for residential purposes only, and not for short-term rental, hotel or resort use.

89.    The preferred lenders, in collusion with, the INVSCO defendants knew of the short term rentals but processed the loan applications as residential purchases.

90.    Upon information and belief and as a necessary component to their marketing strategy, INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK conspired with the preferred appraisal companies to report inflated values for condominium units that were well above market prices.

91.    Upon information and belief INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK did this through supplying highly inflated rent figures for the subject properties and using inappropriate comparable sales information contrary to established appraisal guidelines and standards.

92.    Upon information and belief, the preferred appraisal companies knew or reasonably should have known that the rent figures, sometimes two to three times above market rates, were false or inflated rent figures.

93.    Upon information and belief, the preferred lenders knew or reasonably should have known that the rent figures provided were false or inflated rent figures.

94.    Upon information and belief, the preferred appraisers used these figures along with improperly selected comparable sales figures to generate appraised values well above the market for these condominium units.

95.    These appraisals were used to justify the inflated sales prices to PLAINTIFFS and to facilitate financing for the condominium purchases through the preferred lenders.

96.    Upon information and belief, the preferred lenders knew or reasonably should have known based upon the Nevada market that the purchase prices at the Meridian were highly inflated.

97.    In turn, upon information and belief, the preferred appraisers would then use these inflated sales prices as comparable sales prices to justify future sales of Meridian condominium units. In essence, INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK; the preferred appraisers, and the preferred lenders, created their own pool of comparable sales prices to justify the inflated sales prices quoted to PLAINTIFFS all to PLAINTIFFS' detriment and without their knowledge.

98.    At no time did INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS,

BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK ever disclose to any Plaintiff that 20-30 per cent of the purchase price of the condominium unit would be transferred to the leaseback company to make monthly leaseback payments to the Plaintiffs.

99.     Upon information and belief and to facilitate the future purchase of condominium units, INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK conspired with the preferred title insurance and escrow companies to conceal from PLAINTIFFS the transfer out of escrow tens of thousands of dollars to INVSCO and its leaseback company agents and subsidiaries.

100.     Upon information and belief, the title companies concealed this transfer of 20 to 30 percent of the purchase price of the leaseback units to INVSCO and its subsidiaries by providing incomplete, false, fraudulent, or altered closing documents to some or all PLAINTIFFS which omitted the figures or documents showing a funds transfer to these INVSCO related entities out of the escrow accounts for the transactions.

101.     Upon information and belief, the preferred title insurance and escrow companies knew this conduct was contrary to their duties enumerated in the escrow instructions for each transaction.

102.     Upon information and belief, the preferred title insurance and escrow companies knew this conduct would conceal the fraudulent activity from PLAINTIFFS of INVSCO, along with its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES,

REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK.

103.    Upon information and belief and to facilitate the future purchase of condominium units, INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK conspired with the preferred title insurance and escrow companies to conceal from PLAINTIFFS the fact that the parcel of land comprising the Flamingo Road entrance gate was not being conveyed as part of the common area of the Meridian Condominium Complex.

104.    At no time did INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK along with the preferred appraisers, the preferred lenders, the preferred title insurance and escrow companies ever disclose to any Plaintiff that the Flamingo entrance was not being conveyed as part of the common area of the Meridian Condominium Complex.

105.    The parcel of land under the Flamingo entrance is described as Parcel No. 162-21-501-007; owned by FC Income Properties, LLC; leased to KOVAL; and not under the control of the Meridian HOA.

106.    By all appearances, the Flamingo gate is the main avenue of ingress and egress from the property as it is situated next to the clubhouse and registration area of the complex where

intended transient lodgers would enter and register for a stay in at the Meridian Complex.

107.    The preferred title insurance and escrow companies failed to disclose this ownership interest in any title insurance policy documents issued to PLAINTIFFS relating to their purchase of the Meridian Condominiums.

108.    INVSCO, KOVAL, FCC, MACKENZIE and REALTY concealed the fact that they had received, in June of 2006, a proposal to rent out the condominium units on an overnight or hotel type basis.

109.    Simultaneously, at the time of signing a purchase agreement, approximately 375 of the potential Plaintiffs signed a rental agreement leasing back the purchased unit to Defendant KOVAL and/or CRS, who indicated that said unit may already have been rented out to a third party, again concealing the nature of that rental.

110.    Unbeknownst to Plaintiffs, Defendants INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK had already been renting out the Plaintiffs' units on a daily basis in violation of County land use ordinances and without proper licensing.

111.    While at the time of the purchase, those Plaintiffs who had been informed that their units were already subject to a lease were never provided the lease in contravention of RESPA and Nevada disclosure statutes.

112.    The Home Owners Association (herein "HOA"), controlled by Defendants INVSCO and KOVAL and run by Defendants MACKENZIE, ZINK and DESMET, kept increasing the homeowners' assessments but, in violation of Nevada statutes, refused or neglected to provide the owners any accounting of the assessments or reserves that were paid to the HOA.

113.    Said Home Owners Association was comprised of employees or affiliates of INVSCO including ZINK, DESMET and MACKENZIE and said Association operated as an alter ego of INVSCO who, despite demand, has never accounted for the reserves that each condominium unit owner including Plaintiffs contributed to pursuant to the purchase agreement.

114.    In fact, the HOA, under the control of INVSCO affiliates, paid for costs incurred solely for the benefit of INVSCO including but not limited to its construction debris removal costs and for additional security personnel caused by the use of the premises for hotel rentals.

115.    Unbeknownst to Plaintiffs at the time they made their purchases, INVSCO, under the Declaration of Covenants, Conditions, and Restrictions, reserved to KOVAL, without consideration, the area designated as the Commercial Area in perpetuity, with easements across the common areas.

116.    Furthermore, CONAM maintained title to the entryways to the Meridian Condominiums in direct contravention of what the Plaintiffs were informed.

117.    Defendants INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK further concealed from Plaintiffs that possession of the Flamingo entrance to the property was leased from a third party and that the HOA did not have the ability to control the use of this primary access point to the property.

118.    In or about September of 2007, a letter from the Board of Directors of the HOA was sent to the Plaintiffs as well as the other unit owners informing them of a change in land use designations in order to fulfill Clark County requirements for overnight rental activities.

119.    Defendants INVSCO, through its agents and subsidiaries including but not limited

to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK offered Plaintiffs an extended lease for overnight rentals with Defendant PRIVATE RESIDENCES at the same rental rate that INVSCO and its subsidiaries were obligated to pay.

120.    The only alternative for these Plaintiffs, as explained by Defendants, was to have no further rental income despite the fact that they already had valid and existing leases with CRS/INVSCO or KOVAL.

121.    From these Plaintiffs' perspectives, they were forced to agree to the leases with PRIVATE RESIDENCES lest they lose their sole source of income necessary to meet their fraudulently inflated mortgage obligations.

122.    The lease agreement contains an unconscionable clause which releases INVSCO/CRS/KOVAL from any liability and under the circumstances was oppressive and obtained through coercive means.

123.    At no time when Plaintiffs entered into the lease back agreements did Defendants INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK inform Plaintiffs that the rental of their units for overnight stays was illegal.

124.    To the contrary, Plaintiffs were justified in relying upon INVSCO and its agents and affiliates to ensure their units would be used only as permitted by law.

125.    In or about June of 2008, Clark County officials found the overnight rental program

to be in violation of the licenses and uses granted to the Meridian and, as a result, upon information and belief, there are over $560,000 in back room taxes due from the Meridian to Clark County.

126.    In or about July or August of 2008, PRIVATE RESIDENCES, whose managing member, Defendant CAMPBELL, is believed to be the attorney for INVSCO, stopped payments under the various Leases entered into with some of the homeowners of the Meridian Condominiums and also stopped the HOA assessment and real property tax payments made on behalf of said owners.

127.    This caused many owners of the Meridian Condominiums to default on their loans and depressed the property values of the units owned by Plaintiffs.

128.    The fines imposed by the County and Defendants' violations of the statutes further subjected the Meridian Condominiums to a stigma and overall negative connotation as to the viability and marketability of the project.

129.    In addition to the foregoing breaches and violations, some of the Plaintiffs and other unit owners have observed Defendants' personnel and agents moving furniture from unit to unit and onto trucks and have discovered that furniture and appliances were missing from their units.

130.    On information and belief, the units were never re-classified as a Resort Condominium as was represented to Plaintiffs at the time they signed their leases with Defendant PRIVATE RESIDENCES.

131.    The sale and leaseback program promulgated, marketed and sold by Defendants INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK to Plaintiffs was never registered with state and federal authorities in accordance with applicable securities laws.

132.    Upon information and belief, the preferred lenders in financing the purchase of the Meridian condominiums knew or reasonably should have known prior to completing the financing process that many of the PLAINTIFFS could not afford to repay the loans being given them.

133.    During the sale process, INVSCO and its sales related entities, along with representatives of the preferred lenders met without the knowledge of PLAINTIFFS on a weekly basis to track the progress of loan approvals. Upon information and belief, INVSCO and its sales related entities conspired with the preferred lenders to subvert the underwriting process to complete the sales of condominium units by closing the loans.

134.    To accomplish the closure of loans, upon information and belief, INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK and the preferred lenders changed application figures, adjusted income estimates, net worth calculations, or even engaged override procedures within the preferred lenders underwriting process to complete sales.

135.    Upon information and belief, INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK; the preferred lenders; and, the preferred appraisers, acted in concert to sell Meridian Condominiums to PLAINTIFFS knowing that said PLAINTIFFS could not afford to make the payments on those mortgages.

136.    PLAINTIFFS were induced into taking these mortgages on the exorbitantly priced

condominiums through the promises by Defendants that the guaranteed leaseback payments would more than cover the expected mortgage payments thus creating a profit or positive cash flow after entering into the transaction.

137.    On information and belief and based upon the activities of Defendants, the preferred appraisers, and the preferred lenders, foreclosure of the condominium properties was a foreseeable consequence of their wrongful acts since all Defendants knew that Plaintiffs were incapable of meeting their fraudulently inflated mortgage obligations without the flow of leaseback payments to Plaintiffs.

138.    Notwithstanding this knowledge, INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK breached the leaseback agreements to Plaintiffs

139.    As a direct consequence of the breach of the leaseback agreements at the Meridian, some or all PLAINTIFFS were unable to make their respective mortgage payments.

140.    Upon information and belief, many of Plaintiffs' mortgage obligations were sold on the secondary market to other lenders or investors. Where known those lenders or investors are named as Defendants here because the nature of the fraud identified in the instant complaint makes readily apparent when conducting a due diligence review of Plaintiffs' loan documents that a subversion of the originating bank's underwriting process occurred.

141.    Upon information and belief this fact is readily apparent to any banking entity conducting due diligence in support of their purchase of the Plaintiffs' mortgage paper through a review of the loan documents. Accordingly, any lender purchasing or refinancing Meridian mortgages knew or reasonably should have known that fraud was integral in the creation of the

original mortgage obligations.

142.    Upon information and belief, many of Plaintiffs' mortgage obligations were sold on the secondary market to other lenders or investors. Where known those lenders or investors are named as Defendants herein because pursuant to Nevada law they are necessary parties as they hold title to the properties which are the subject of this lawsuit.

143.    As a result of the conduct and actions of Defendants, Plaintiffs have been required to retain legal counsel to protect their legal rights and to prosecute this action, and are therefore entitled to an award of reasonable attorney's fees plus costs incurred herein.

### FIRST CAUSE OF ACTION
**Fraud and Fraudulent Inducement – Positive Cash Flow Scheme**

144.    Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto made as if fully set forth below.

145.    Defendants INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK in concert and through a conspiracy with THE PREFERRED LENDERS and the PREFERRED APPRAISERS fraudulently induced Plaintiffs to enter into the purchase and leaseback agreements when Defendants knew or should have known that Defendants would not have sufficient capital reserves to pay the lease rents unless they operated the rental program as a hotel business.

146.    Said Defendants knew or should have known that they could not maintain sufficient rental income to pay on the leases and would eventually breach the leases.

147.    Said Defendants made these representations as part of the course and scope of their scheme to defraud Plaintiffs through the sale of Meridian Condominium units during the years

2005-2007 with said representations and omissions being made contiguously with the sale and closing of condominium units on the dates listed in Exhibit A.

148.    With knowledge of the aforesaid factors, Defendants fully instituted the sale and leaseback program and induced Plaintiffs to invest in said program by falsely representing a positive cash flow when, in fact, the cash flow was negative.

149.    With knowledge of the aforesaid factors, Defendants fully instituted the sale and leaseback program and induced Plaintiffs to invest in said program by falsely representing that they possessed the proper land use permits, licensing, approvals, and zoning to conduct the activities necessary to produce the "positive cash flow" promised along with short term rental activities.

150.    Moreover, in order to induce Plaintiffs into the purchase Defendants represented that various improvements would be made to the units when said Defendants knew or should have known that they could not or would not fulfill such representations in a timely manner.

151.    At the time of entering into the extension of the leaseback agreements, Defendants required some of the Plaintiffs to furnish the condominium units at a price of over $25,000.00 when Defendants knew that they would never perform their representations.

152.    Plaintiffs justifiably relied on Defendants' misrepresentations to their detriment and suffered the damages, as aforesaid, including but not limited to damages of loss of income, loss of furniture and appliances, loss of reserves paid to the HOA and the decrease in property values.

153.    Plaintiffs are entitled to rescission of the agreements for the purchase of their properties and entitled to an award of punitive damages as is just and proper as well as pre-judgment and post-judgment interest, along with attorneys fees and costs of suit.

## SECOND CAUSE OF ACTION
### Fraudulent Inducement – No Zoning or Licensure

154.    Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto made as if fully set forth below.

155.    Defendants INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK in concert and through a conspiracy with THE PREFFERRED LENDERS and the PREFFERRED APPRAISERS falsely and fraudulently represented that they possess all necessary licenses, zoning, approvals, permits, and bonds to conduct the short term rental activity, mortgage services, real estate services, and contractor services at the Meridian Condominium Complex.

156.    Said Defendants failed to first obtain all requisite zoning, business licenses, and county permits and licenses to conduct short term rental activity at the Meridian Condominium Complex.

157.    Said Defendants failed to first obtain all required professional licensing, permits, and bonds to conduct real estate transactions, real estate brokering services, mortgage loan agent services, mortgage loan brokering services, contractors services, building permits, construction inspections, and occupancy certificates.

158.    All failures to obtain the requisite licensing, permits, inspections, bonds, and approvals occurred pursuant to a continuing scheme and conspiracy perpetrated by the Defendants with said failures being made prior to and contiguously with the sale of each condominium unit during the time of the closing dates listed in Exhibit A.

159.    Said Defendants made these representations with the intent to induce Plaintiffs to pay fraudulently inflated prices to facilitate their lease-back scheme and mask from Plaintiffs the transfer from escrow large amounts of funds to the leaseback companies to facilitate the payment of leaseback payments to Plaintiffs essentially by using Plaintiff's own money borrowed from lenders.

160.    The representations were untrue, and Defendants knew that their representations

were fraudulent and that such actions would induce Plaintiff to purchase the condominiums.

161.   All the above representations were made with the intent to defraud Plaintiffs, that is, Defendants made the representations and promises for the purpose of inducing Plaintiffs to rely upon them.

162.   Plaintiffs were unaware of Defendants' misrepresentations and conspiracies, and as such, they acted in reliance upon the promises and representations and were justified in relying upon the promises made by the Defendants. Plaintiffs only began to first learn the truth about Defendants' misrepresentations when the Clark County District Attorney issued a cease and desist order to Defendants for their illegal hotel operations at the Meridian Complex on or about June of 2008.

163.   Further investigation after June of 2008 has revealed Defendants other failures to obtain all licensing, permits, approvals, bonds, inspections, and other licensure required by law.

164.   As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiffs have suffered and will suffer general and consequential damages in an amount to be determined according to the proof adduced at trial.

165.   Plaintiffs are entitled to rescission of the agreements for the purchase of their properties and entitled to an award of punitive damages as is just and proper as well as pre-judgment and post-judgment interest, along with attorneys fees and costs of suit.

**THIRD CAUSE OF ACTION**
**Fraudulent Inducement – Price Inflation Scheme**

166.   Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto made as if fully set forth below.

167.   Defendants INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN,   REALTY   SERVICES,   REALTY,   PRIVATE   RESIDENCES,   MCRS,

BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK in concert and through a conspiracy with THE PREFERRED LENDERS and the PREFERRED APPRAISERS falsely and fraudulently created inflated market pricing for condominium by producing fraudulent appraisal reports based upon grossly inflated rental income reporting.

168.    Said Defendants made these representations as part of the course and scope of their scheme to defraud Plaintiffs through the sale of Meridian Condominium units during the years 2005-2007.

169.    Said Defendants made these representations with the intent to induce Plaintiffs to pay these fraudulently inflated prices to facilitate their lease-back scheme and mask from Plaintiffs the transfer from escrow large amounts of funds to the leaseback companies to facilitate the payment of leaseback payments to Plaintiffs essentially by using Plaintiff's own money borrowed from lenders.

170.    The representations were untrue, and Defendants knew that their representations were fraudulent and that such actions would induce Plaintiff to purchase the condominiums.

171.    All the above representations were made with the intent to defraud Plaintiffs, that is, Defendants made the representations and promises for the purpose of inducing Plaintiffs to rely upon them.

172.    Plaintiffs were unaware of Defendants' misrepresentations and conspiracies, and as such, they acted in reliance upon the promises and representations and were justified in relying upon the promises made by the Defendants. Plaintiffs began to learn the truth about Defendants' misrepresentations when the Clark County District Attorney issued a cease and desist order to Defendants for their illegal hotel operations at the Meridian Complex.

173.    As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiffs have suffered and will suffer general and consequential damages in an amount to be

44

determined according to the proof adduced at trial.

174.    Plaintiffs are entitled to rescission of the agreements for the purchase of their properties and entitled to an award of punitive damages as is just and proper as well as pre-judgment and post-judgment interest, along with attorneys fees and costs of suit.

**FOURTH CAUSE OF ACTION**
**Fraudulent Inducement – Flamingo Gate Ownership**

175.    Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto made as if fully set forth below.

176.    Defendants INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK in concert and through a conspiracy with THE PREFERRED LENDERS and the PREFERRED APPRAISERS falsely and fraudulently represented ownership and control of the Flamingo Gate was owned and conveyed to Plaintiffs as part of the common / commercial area of the Meridian Condominium Complex.

177.    Said Defendants made these representations as part of the course and scope of their scheme to defraud Plaintiffs through the sale of Meridian Condominium units during the years 2005-2007 with said representations an omissions being made contiguously with the sale and closing of condominium units on the dates listed in Exhibit A.

178.    Said Defendants made these representations with the intent to induce Plaintiffs to pay these fraudulently inflated prices to facilitate their lease-back scheme and mask from Plaintiffs the transfer from escrow large amounts of funds to the leaseback companies to facilitate the payment of leaseback payments to Plaintiffs essentially by using Plaintiff's own money borrowed

from lenders to extract tremendous monetary profits from Plaintiffs.

179.    The representations were untrue, and Defendants knew that their representations were fraudulent and that such actions would induce Plaintiff to purchase the condominiums.

180.    All the above representations were made with the intent to defraud Plaintiffs, that is, Defendants made the representations and promises for the purpose of inducing Plaintiffs to rely upon them.

181.    Plaintiffs were unaware of Defendants' misrepresentations and conspiracies, and as such, they acted in reliance upon the promises and representations and were justified in relying upon the promises made by the Defendants. Plaintiffs began to learn the truth about Defendants' misrepresentations when the Clark County District Attorney issued a cease and desist order to Defendants for their illegal hotel operations at the Meridian Complex on or about July of 2008.

182.    As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiffs have suffered and will suffer general and consequential damages in an amount to be determined according to the proof adduced at trial.

183.    Plaintiffs are entitled to rescission of the agreements for the purchase of their properties and entitled to an award of punitive damages as is just and proper as well as pre-judgment and post-judgment interest, along with attorneys fees and costs of suit.

### FIFTH CAUSE OF ACTION
### Fraudulent Inducement – Commercial Area Retention

184.    Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto made as if fully set forth below.

185.    Defendants INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET,

S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK in concert and through a conspiracy with THE PREFERRED LENDERS and the PREFERRED APPRAISERS falsely and fraudulently represented to Plaintiffs that they would give over ownership and control of the common area / commercial area 90 days after cessation of sales activities at the Meridian Condominium Complex.

186.    Said Defendants made these representations as part of the course and scope of their scheme to defraud Plaintiffs through the sale of Meridian Condominium units during the years 2005-2007 with said representations an omissions being made contiguously with the sale and closing of condominium units on the dates listed in Exhibit A.

187.    Said Defendants made these representation in the purchase agreements for the Condominium units yet now state, after closing of the transactions listed in Exhibit A, that they have property rights to the premises in perpetuity.

188.    Said Defendants made these representations with the intent to induce Plaintiffs to pay these fraudulently inflated prices to facilitate their lease-back scheme and mask from Plaintiffs the transfer from escrow large amounts of funds to the leaseback companies to facilitate the payment of leaseback payments to Plaintiffs essentially by using Plaintiff's own money borrowed from lenders to extract tremendous monetary profits from Plaintiffs.

189.    The representations were untrue, and Defendants knew that their representations were fraudulent and that such actions would induce Plaintiffs to purchase the condominiums.

190.    All the above representations were made with the intent to defraud Plaintiffs, that is, Defendants made the representations and promises for the purpose of inducing Plaintiffs to rely upon them.

191.    Plaintiffs were unaware of Defendants' misrepresentations and conspiracies, and as such, they acted in reliance upon the promises and representations and were justified in relying upon the promises made by the Defendants. Plaintiffs began to learn the truth about Defendants'

47

misrepresentations when the Clark County District Attorney issued a cease and desist order to Defendants for their illegal hotel operations at the Meridian Complex on or about July of 2008.

192.    As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiffs have suffered and will suffer general and consequential damages in an amount to be determined according to the proof adduced at trial.

193.    Plaintiffs are entitled to rescission of the agreements for the purchase of their properties and entitled to an award of punitive damages as is just and proper as well as pre-judgment and post-judgment interest, along with attorneys fees and costs of suit..

### SIXTH CAUSE OF ACTION
### Securities Fraud

194.    Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto made as if fully set forth below.

195.    Each of the Defendants above-named participated in the sales and leaseback program including but not limited to all of the individually named Defendants.

196.    Each of the Defendants including but not limited to Defendants INVSCO, through its agents, investors and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK, jointly and actively conspired and made agreements with THE PREFERRED LENDERS and THE PREFERRED APPRAISERS to directly participate in the sales of the condominiums to Plaintiffs, directly promoted said sales as an investment with economic benefits to be derived from the managerial efforts of the Seller or a leasing entity under the Seller's control.

197.    In reliance on the misrepresentations and concealed material facts as stated herein

48

and incorporated by reference herein, all of the Plaintiffs above-named invested their funds in said sale and leaseback program.

198.    All of said Defendants offered the sale of the condominiums to Plaintiffs above-named on the promise of said condominiums being placed in a rental pool solely managed by INVSCO and its affiliated entities including KOVAL, CRS, and later by PRIVATE RESIDENCES.

199.    The ownership of said entities is unknown to Plaintiffs and said information is within the exclusive possession of Defendants although on information and belief, the owners of the entities and control of the rental pool is believed to constitute a common enterprise in that in disregard of the entities corporate façades, they constitute the same persons or group of persons or related persons and the requisite of vertical commonality in the determination of an investment contract is met.

200.    Under the rental program, the Plaintiffs could **not** occupy said units or rent it out during the operation of the lease entered into with the various entities, all of which were with the Defendants above-named and their owners.

201.    The alternate requisite of an investment contract of horizontal commonality is thus met because the Plaintiffs participating in the rental pool were identical.

202.    All of the Plaintiffs above-named were dependent on said Defendants to pay the lease rents as agreed to under the leases with said Defendants in order to cover their debt service on the loans they took out to purchase the condominium units.

203.    Most of the Plaintiffs were from out of state and all of the Plaintiffs were denied access to the units they purchased and leased back to the Defendants and were solely dependent on Defendants for any amounts they were to receive under the leaseback program.

204.    Said Defendants were complicit with the overall scheme which involved Plaintiffs' (1) investment of money; (2) in a common enterprise; and (3) the expectation of profits

substantially from the efforts of the promoter or a third party and chose to ignore the requirements of the State and Federal securities statutes.

205.    Thus, the sale and leaseback program constituted an investment contract within the meaning of *Hocking v. Dubois*, 885 F.2d 1449 (9th Cir. 1989) construing *Securities & Exchange Commission v. Howey*, 328 U.S. 293; 66 S. Ct. 1100; 90 L. Ed. 1244; 1946 U.S. LEXIS 3159; 163 A.L.R. 1043(1946).

206.    Defendants utilized emails, the US mail, telephones, wires and other devices of interstate commerce to generate and consummate the sale and leaseback program with Plaintiffs.

207.    Defendants failed to register and comply with the registration and disclosure requirements of the 1933 Securities Act including but not limited to 15 USC §§77e and l.

208.    Defendants further violated Sec.'s 90.460 and 90.660 of the Nevada Revised Statutes.

209.    Defendants misrepresentations and material concealment of facts as stated herein and incorporated by reference also violated Sec. 12(2) of the 1933 Securities Act, 15 USC §77l(a)(2), Sec. 10(b) of the 1934 Securities Act, 15 USC §78j(b) and Rule 10(b)-5, 17 CFR §240.10b-5 and NRS 90.570.

210.    Said actions, including Defendant's misrepresentations and omissions of material facts as stated and incorporated by reference herein including but not limited to:

    a.    The failure to disclose the illegality of using the demised premises for hotel rentals;

    b.    The failure to disclose the unlicensed operation of the premises for illegal purposes;

    c.    The failure to disclose the lack of financial resources to abide by the terms of the leases entered into with Plaintiffs;

    d.    The failure to disclose the lack of ownership of the main entry to the

Meridian condominiums and the area described by Defendants as the "commercial area;"

e.  The misrepresentation of the rents and inflated comparables in determining the appraisals;

f.  The failure to disclose that Plaintiffs purchase price was inflated in order to use some of the proceeds to pay Plaintiffs and that Plaintiffs were actually paying rents to themselves;

g.  Misrepresenting that the units would be used for long term rentals and falsely misrepresenting the Plaintiffs financial applications in order to secure financing and consummate the sale of the units; and,

h.  The misrepresentation of a "positive cash flow" sales and lease back program were made knowingly by Defendants or with a reckless disregard for the truth of said concealed material facts in order to consummate the sale and leaseback program with Plaintiffs which were made orally and in a public offering statement.

211.   As stated above, the Defendants used emails, bank wires, telephones and other devices or instrumentalities of interstate commerce to effectuate the sale and leaseback program.

212.   Defendants had said material facts and omissions exclusively within their possession and owed Plaintiffs a duty to disclose said facts which would have materially affected Plaintiffs' decision to enter into the sale and leaseback program.

213.   All of the Plaintiffs were unaware of the misrepresentations and omissions and justifiably relied on the misrepresentations and non-disclosed material facts which were exclusively within the possession of Defendants.

214.   As a result of Defendants' actions, Plaintiffs incurred damages as aforestated, and are entitled to a rescission and restitution of all amounts paid and an award of general and special

damages and punitive damages as well as attorneys fees and costs.

## SEVENTH CAUSE OF ACTION
### Breach of Contract – Breach of Leaseback / Purchase Agreement

215. Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto made as if fully set forth below.

216. Plaintiffs and Defendants INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK entered into a valid and existing written purchase and leaseback agreements.

217. Plaintiffs performed all of the duties and obligations required of them under the terms of the contracts between the parties.

218. To the extent that any duties or obligations required of Plaintiffs have not been performed, such duties or obligations have been expressly excused by reason of Defendants' non-performance of the contracts.

219. Defendants INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK breached the purchase agreements:

      a. by failing to convey title to the land under the Flamingo Gate;

      b. by failing to convey title and possession of the common and commercial areas;

c. by failing to complete all construction renovations as promised;

d. by failing to only use HOA reserve funds for the benefit of the Meridian owners pursuant to the agreement; and,

e. by failing to pay over rents / leaseback payments as promised for the full term of the contracts.

220.    Defendants INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK breached the Leaseback agreements by unilaterally cancelling the lease agreements and requiring some of the Plaintiffs as well as other owners to either lease to PRIVATE RESIDENCES or opt out of the condominium leaseback program.

221.    Defendants INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK breached the Leaseback agreements by failing to pay over rents / leaseback payments to Plaintiffs as promised for the full term of the contracts.

222.    As such, said Defendants have not performed all conditions, covenants and promises required of them in accordance with the Contracts, including without limitation, failing to convey title to the land under Flamingo Gate; by failing to convey title and possession of the common and commercial areas; by failing to complete all construction renovations as promised; by unilaterally cancelling the lease agreements and requiring some of the Plaintiffs as well as other owners to

either lease to PRIVATE RESIDENCES or opt out of the condominium leaseback program; and,

by failing to pay over rents / leaseback payments as promised for the full term of the contracts.

223.    As a direct and proximate result of Defendant(s)' breach of the Contract, Plaintiffs

have incurred expenses and have suffered and will suffer general and foreseeable consequential

damages, exclusive of costs and interest, in an amount to be determined according to proof adduced

at trial.

224.    Plaintiff(s) has/have further been required to retain the services of an attorney to

prosecute this action on his/her/their benefit, and as such are entitled to attorney's fees and costs

incurred in prosecuting this matter.

225.    As a result of the breaches of the Defendants above-named, Plaintiffs suffered

damages including but not limited to general and special damages, including loss of financing,

decrease in property values, loss of the HOA reserve payments, loss of income, and interest

expenses, and Defendants' multiple breaches can and ultimately have resulted in the loss of the

condominium units to foreclosure.

226.    Plaintiffs are entitled to rescission of their purchase agreements and an award of

punitive damages as is just and proper, as well as their pre-judgment and post-judgment interest

and attorneys fees and costs.

### EIGHTH CAUSE OF ACTION
### Breach of Contract – Furniture Package Purchase Agreement

227.    Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto

made as if fully set forth below.

228.    Plaintiffs and Defendants INVSCO, through its agents and subsidiaries including but

not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH,

CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS,

BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET,

S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK entered into a valid and existing written furniture package purchase agreement.

229.    Plaintiffs performed all of the duties and obligations required of them under the terms of the contracts between the parties.

230.    To the extent that any duties or obligations required of Plaintiffs have not been performed, such duties or obligations have been expressly excused by reason of Defendants' non-performance of the contracts.

231.    Defendants INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK breached the furniture package purchase agreements by failing to convey and deliver the furniture items purchased pursuant to the contract.

232.    As such, said Defendants have not performed all conditions, covenants and promises required of them in accordance with the Contracts, including without limitation, failing to convey and deliver the furniture items purchased pursuant to the contract and concealing for Plaintiffs that said furniture was not delivered by moving furniture from unit to unit.

233.    As a direct and proximate result of Defendants' breach of the Contract, Plaintiffs have incurred expenses and have suffered and will suffer general and foreseeable consequential damages, exclusive of costs and interest, in an amount to be determined according to proof adduced at trial.

234.    Plaintiff(s) has/have further been required to retain the services of an attorney to prosecute this action on his/her/their benefit, and as such are entitled to attorney's fees and costs incurred in prosecuting this matter.

## NINTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing

235.    Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto made as if fully set forth below.

236.    It is well established that in every contract, including the contracts between Plaintiffs and Defendants, there exists in law an implied covenant of good faith and fair dealing.

237.    Defendant INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK possessed a position of superior knowledge to that of the Plaintiffs by way of the myriad roles said Defendants played including but not limited too:

    a.  Having an officer of INVSCO on the HOA;

    b.  By controlling the marketing of the units as a short term rental resort;

    c.  By participating in the mortgage broker and real estate portion of the transactions;

    d.  By employing the sales representatives of the units;

    e.  By selecting the appraisers to be used for valuating the units;

    f.  By identifying and insisting that unit purchasers use Defendants' preferred lenders;

    g.  By identifying and insisting that unit purchasers use Defendant's preferred title / escrow companies; and,

    h.  By coordinating the improvements pursuant to the extension of leases and negotiating the leases with Plaintiffs.

238.    Defendant INVSCO and its affiliates stood in a special and/or fiduciary capacity to Plaintiffs and had a duty to disclose material information to enable Plaintiffs to make informed decisions regarding their condominium unit purchase.

239.    Defendants have breached the covenant of good faith and fair dealing attendant to the contracts by:

    a.  Intentional misrepresentations;

    b.  Fraudulently inducing purchases through an unfeasible leaseback program;

    c.  By failing to convey title to the land under the Flamingo Gate;

    d.  By failing to convey title and possession of the common and commercial areas;

    e.  By failing to complete all construction renovations as promised;

    f.  By failing to only use HOA reserve funds for the benefit of the Meridian owners pursuant to the agreement;

    g.  By failing to pay over rents / leaseback payments as promised for the full term of the contracts;

    h.  Unilaterally cancelling leases in breach thereof;

    i.  Converting the furniture and appliances of Plaintiffs to Defendants' use;

    j.  Depleting HOA funds while failing to improve and maintain the premises;

    k.  Promulgating an illegal, unconscionable and adhesive contract, all as aforesaid;

    l.  Reserving commercial units and perpetual easements without paying common area assessments; and,

    m.  Failing to maintain reserve capital to meet their financial obligations.

240.    Defendants' actions, misrepresentations, deception, concealment, and breach of the covenant of good faith and fair dealing were done intentionally with malice for the specific purpose

of causing injury to Plaintiffs.

241.    As a direct and proximate result of Defendants' breach of the covenant of good faith and fair dealing, Plaintiffs have been damaged as aforesaid and incorporated herein, and Plaintiffs are entitled to an award of pre-judgment and post-judgment interest, attorneys fees and costs and punitive damages to be determined in accordance with proof at trial.

242.    Plaintiff(s) has/have further been required to retain the services of an attorney to prosecute this action on their behalf, and as such are entitled to attorney's fees and costs incurred in prosecuting this mater.

## TENTH CAUSE OF ACTION
### Conversion/Trespass to Chattels

243.    Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto made as if fully set forth below.

244.    Defendants INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK, participated in the conversion of Plaintiff and HOA property.

245.    Plaintiffs have been informed through other homeowners that they have observed numerous containers delivered to the premises which purportedly contained furniture purchased by Plaintiffs and said homeowners observed the containers taken away without being unloaded.

246.    Several Plaintiffs have inspected their condominium units and found them devoid and stripped of the furniture and appliances they had paid for.

247.    Plaintiffs have been informed by other homeowners that they have observed said Defendants and their agents moving furniture from unit to unit at all hours of day and night.

248.   On information and belief, the above-named Defendants conspired and converted to their own use HOA funds and reserves to pay for construction debris removal and construction security costs in excess of $200,000.00 that had been deposited by Plaintiffs.

249.   Moreover, Defendants have appropriated portions of the Clubhouse for their own use and occupation.

250.   Defendants took this property from Plaintiffs and have either retained the same for use by Defendants and concealed this taking without first having paid Plaintiffs the value thereof.

251.   Plaintiffs are informed and believe and thereon allege that Defendants have and continue to hold these items belonging to Plaintiffs as more fully alleged above.

252.   Despite demand, Defendants have refused and continue to refuse to return Plaintiffs' personal property, including but not limited to the items mentioned above

253.   Defendants' actions and conduct constitute conversion and/or trespass to chattels.

254.   As a result of Defendants' wrongful conduct, Plaintiffs have incurred damages as aforesaid and hereinafter stated and incorporated by reference herein, and Plaintiffs are entitled to an award of punitive damages and other extraordinary relief enjoining Defendants from misusing the Plaintiffs' property and premises.

### ELEVENTH CAUSE OF ACTION
### Deceptive Trade Practices/Fraud – NRS 598.0915(15)

255.   Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto made as if fully set forth below.

256.   NRS 598.0915 reads in pertinent part that **"**A person engages in a "deceptive trade practice" if, in the course of his business or occupation, he… [k]nowingly makes any other false representation in a transaction."

257.   Defendants INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS,

GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK, knowingly made false representations including but not limited too:

258.    Said Defendants falsely represented that they possessed the requisite zoning, licenses, and permits to conduct short term rental activity at the Meridian Condominium Complex.

259.    Said Defendants falsely represented that they possessed ownership of the parcel of land under the Flamingo Entrance at the Meridian Condominium Complex and that control of the Flamingo gate would be controlled by the HOA.

260.    Said Defendants falsely represented that they would convey the commercial / common area to the Plaintiffs after the cessation of sales activity at the Meridian Condominium Complex.

261.    Said Defendants falsely represented that their personnel possessed all required professional licensing, permits, and bonds to conduct real estate transactions, real estate brokering services, mortgage loan agent services, and mortgage loan brokering services.

262.    Said Defendants falsely represented the appraised value of the meridian condominium units through the conveyance of false and fraudulent appraisals based upon substantially inflated rent figures.

263.    Said Defendants falsely represented that they delivered furniture purchased pursuant to contract with some Plaintiffs.

264.    Said Defendants falsely representing that they had complied with all applicable securities laws including that they filed all necessary registrations and complied with all necessary securities regulations.

265.    All representations were made pursuant to a continuing scheme and conspiracy perpetrated by the Defendants with said false representations being made contiguously with the sale

of each condominium unit during the time of the closing dates listed in Exhibit A.

266.    As a direct and proximate result of the deceptive trade practices of Defendants, and each of them, Plaintiffs have incurred general and special damages as aforesaid and hereinafter stated and incorporated by reference herein, and Plaintiffs are entitled to have said amounts trebled, as well as awarded their attorneys fees and costs pursuant to statute.

## TWELFTH CAUSE OF ACTION
### Deceptive Trade Practices/Fraud – NRS 598.0923(1)

267.    Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto made as if fully set forth below.

268.    NRS 598.0923(1) reads in pertinent part that "A person engages in a "deceptive trade practice" when in the course of his business or occupation he knowingly… Conducts the business or occupation without all required state, county or city licenses."

269.    Defendants INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK, knowingly failed to obtain all requisite state, county, and city licenses necessary to carry out the occupation and services given to Plaintiffs.

270.    Said Defendants failed to first obtain all requisite zoning, business licenses, and county permits and licenses to conduct short term rental activity at the Meridian Condominium Complex.

271.    Said Defendants to first obtain all required professional licensing, permits, and bonds to conduct real estate transactions, real estate brokering services, mortgage loan agent services, mortgage loan brokering services, contractors services, building permits, construction

inspections, and occupancy certificates.

272.    All failures to obtain the requisite licensing, permits, inspections, bonds, and approvals occurred pursuant to a continuing scheme and conspiracy perpetrated by the Defendants with said failure being made prior to and contiguously with the sale of each condominium unit during the time of the closing dates listed in Exhibit A.

273.    As a direct and proximate result of the deceptive trade practices of Defendants, and each of them, Plaintiffs have incurred general and special damages as aforesaid and hereinafter stated and incorporated by reference herein, and Plaintiffs are entitled to have said amounts trebled, as well as awarded their attorneys fees and costs pursuant to statute.

## THIRTEENTH CAUSE OF ACTION
### Breach of Fiduciary Duty – Title & Escrow Improprieties

274.    Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto made as if fully set forth below.

275.    That Defendants COMMONWEALTH, FIRST AMERICAN, and FIDELITY, as the preferred title insurance and escrow company handling title insurance and escrow duties related to Meridian Condominium purchases owed PLAINTIFFS a fiduciary duty of neutrality to act at all times as a neutral party regarding PLAINTIFFS' condominium purchase and not for personal gain to the detriment of PLAINTIFFS.

276.    Defendants COMMONWEALTH, FIRST AMERICAN, and FIDELITY voluntarily assumed that fiduciary duty by entering into title insurance and escrow agreements with PLAINTIFFS.

277.    Defendants COMMONWEALTH, FIRST AMERICAN, and FIDELITY breached their fiduciary duty to PLAINTIFFS by concealing fund transfers to INVSCO and its related agents and subsidiaries from escrow.

278.    Defendants COMMONWEALTH, FIRST AMERICAN, and FIDELITY breached

their fiduciary duty to PLAINTIFFS by concealing ownership interests in the land parcels which comprise the Meridian Complex common or commercial area along with the Flamingo Road entrance gate.

279.    Defendants COMMONWEALTH, FIRST AMERICAN, and FIDELITYs' actions, misrepresentations, deception, concealment, and breach of their fiduciary duty were done intentionally with malice for the specific purpose of causing injury to the PLAINTIFFS.

280.    Defendants COMMONWEALTH, FIRST AMERICAN, and FIDELITYs' acts and omissions have directly and proximately caused PLAINTIFFS to suffer general and consequential damages in excess of ten thousand dollars ($10,000.00), exclusive of costs and interest, in an amount to be determined according to proof adduced at trial.

281.    By reason of the foregoing, PLAINTIFFS are entitled to exemplary and punitive damages pursuant to NRS 42.005.

282.    PLAINTIFFS has/have been required to retain the services of an attorney and incur costs of collection to prosecute this action, and as such, PLAINTIFFS are entitled to recover from Defendants COMMONWEALTH, FIRST AMERICAN, and FIDELITY their attorney's fees and costs incurred in prosecuting this matter.

## FOURTEENTH CAUSE OF ACTION
### Quiet Title

283.    Plaintiff re-alleges and incorporates all previous paragraphs of this Complaint, as if set forth fully herein.

284.    Plaintiffs owns in fee simple and possess all the real property more fully described in paragraphs 1-20 of this Complaint which is located in the County of Clark, State of Nevada

285.    The above-named Defendants may claim an interest in the Property adverse to Plaintiffs' claim, and any such claim made against Plaintiffs is/are without any right whatsoever, and no Defendants have any right, title, lien or interest in or to the Property or any part thereof.

286.   Moreover, Plaintiffs make fraudulent inducement claims arising out of the purchase transaction for the real property at the Meridian Complex. The remedy for such unlawful conduct is rescission of the purchase transaction.

287.   Plaintiffs make securities fraud claims arising out of the purchase of the real property at the Meridian Complex. The remedy for such unlawful conduct is rescission of the purchase transaction.

288.   As a direct and proximate result of the foregoing, Plaintiffs request judgment that:

    a.  The above-named Defendants and each of them, and all persons or entities claiming under them, be required to set forth in each of their claims to the Property;

    b.  All adverse claims to the Property be determined by decree of this court which shall decree, declare and adjudge that Plaintiffs own in fee simple, and is entitled to quiet and peaceful enjoyment and possession of the Property, and that the above-named Defendants and each of them and all persons claiming under them, have no estate, right, title or interest in the Property or any part thereof;

    c.  The decree permanently enjoin Defendants, each of them and all persons claiming under them, from asserting any adverse claim to Plaintiffs' title to the Property;

289.   That the above-named Defendants be required to take all steps necessary including but not limited to executing all necessary documents to assure the Property is recorded in Plaintiffs' name.

## FIFTEENTH CAUSE OF ACTION
### Accounting

290.   Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto

made as if fully set forth below.

291.    At the time of closing on the purchase and leaseback agreements, Plaintiffs were assessed and Plaintiffs paid a deposit meant to be held as a reserve by the HOA to repair certain elements of the common area.

292.    At said time, Defendant CONAM was the managing agent of the Meridian Condominiums.

293.    On information and belief, Plaintiffs were informed that CONAM has refused to provide the records and accounting to its succeeding managers.

294.    Defendants INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK, controlled the HOA.

295.    Although Nevada Statutes required the HOA to provide annual financial reports, said Defendants failed to comply with said requirements.

296.    Despite Plaintiffs' demands for such financial reports and accountings, said Defendants and their agents failed to account for the reserves paid by Plaintiffs.

297.    Plaintiffs have recently discovered that said Defendants caused the HOA to also pay for INVSCO's trash removal totaling over $190,000.00.

298.    Plaintiffs have further been informed that the HOA has been over-paying for security necessitated by Defendants renting out the premises as hotel rooms as well for other services affiliated with the use as an hotel.

299.    Plaintiffs are entitled to an accounting from Defendants, and Plaintiffs request that this Court order all Defendants in possession of any records of the HOA to turn over such records

65

to Plaintiffs and to the current HOA, and account for the distribution and receipt of any revenues and expenses, without cost or expense to Plaintiffs.

## SIXTEENTH CAUSE OF ACTION
### Declaratory Relief

300.   Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto made as if fully set forth below.

301.   There is now existing an actual, justiciable controversy concerning the matters as aforesaid and hereinafter stated and incorporated by reference herein, including but not limited to whether the lease agreement entered into by Plaintiffs with various entities are void for illegality, unconscionability and adhesion, whether the purchase and sale agreements were breached by Defendants and are void for failure of consideration, and whether Plaintiffs are entitled to the damages and extraordinary and other relief demanded herein including but not limited to rescinding Plaintiffs obligations under the notes and deeds of trusts issued by the Lender Defendants.

302.   In addition this Court should determine the validity of the perpetual easements reserved to Defendants and whether such easements lack consideration; whether Defendants breached the Declaration and By-Laws of the Meridian property; and the illegality of Defendants appropriating portions of the Clubhouse.

303.   By virtue of N.R.S. 30.040, this Court has the power to determine that Plaintiffs are entitled to revocation of acceptance, rescission, and restitution of consideration, and Plaintiffs request an Order of this Court declaring that Plaintiffs are entitled to revocation of acceptance, rescission of all contracts involved in the transactions between Plaintiffs and Defendants, and full restitution of consideration, as well as general, special, punitive and treble damages, attorneys fees and costs and such other relief as requested herein and to be proved at trial.

## SEVENTEENTH CAUSE OF ACTION
### Adhesion, Unconscionability, Illegality

304.   Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto

made as if fully set forth below.

305.    Plaintiffs are individual consumers while Defendant INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CONAM, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK, which are commercial entities, who holds themselves out as the largest condominium developer in the United States.

306.    At all times material hereto Defendants knew or should have known of their duties and obligations related to their representations and their dealings with Plaintiffs.

307.    Defendants coerced Plaintiffs into entering into various contracts for the use of Plaintiffs' condominium units for Defendants' hotel operations.

308.    Defendants' contracts are oppressive and unconscionable in that they restricted and/or eliminated Plaintiffs' property rights and maintain their present lease back agreements with Defendants INVSCO/KOVAL and/or CRS.

309.    Defendants thus forced Plaintiffs to enter into said subsequent lease agreements or lose their only source of income, and forced Plaintiffs to accept the waiver of any claims against Defendants on a "take it or leave it" basis.

310.    Faced with the large outstanding balances on their mortgages, Plaintiffs had no bargaining power and no other recourse but to accept Defendants' contracts.

311.    Defendants further incorporated into the contacts a provision to release Defendants INVSCO and its affiliates from any claims against them.

312.    Defendants purposely made the release inconspicuous in the contracts so that Plaintiffs would not notice the release when they read and signed the contracts.

313.    Although Defendants knew of the illegal purpose of said contracts they had

formulated and pursued this scheme to the detriment of the homeowners.

314.    As a result of Defendants' actions in formulating and operating the illegal scheme, Plaintiffs have suffered damages as aforesaid, and Plaintiffs are entitled to the declaratory relief requested herein, together with an award of punitive damages as well as attorneys fees and costs.

**EIGHTEENTH CAUSE OF ACTION**
**Conspiracy**

315.    Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto made as if fully set forth below.

316.    Defendants INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK, jointly and actively conspired and made agreements to accomplish an unlawful objective for the purpose of maximizing their profits to the detriment of Plaintiffs and other investors and jointly, and in overt acts of conspiracy, deprived Plaintiffs of the benefit of their bargain under the purchase and leaseback agreements, their paid-for furniture and appliances, their reserves deposited with the HOA, their profits, the ability to re-sell the units, their lease rents, and their use of the common area and HOA dues.

317.    Defendants INVSCO, through its agents and subsidiaries including but not limited to FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK, jointly and actively conspired and made agreements with THE PREFERRED LENDERS and THE

PREFERRED APPRAISERS to accomplish an unlawful objective for the purpose of maximizing their profits to the detriment of Plaintiffs and other investors and jointly, and in overt acts of conspiracy.

318.    Said Defendants made these agreements to accomplish the unlawful goal of swindling Plaintiffs with false or fraudulent appraisals and falsifying documents to subvert underwriting guidelines to close financing for condominium sales at the Meridian Complex.

319.    As a result of the actions of Defendants above-named, Plaintiffs have suffered general and special damages as aforestated and which is incorporated by reference herein and Plaintiffs are entitled to an award of punitive damages, attorneys fees and costs and all other relief as demanded herein.

### NINTEENTH CAUSE OF ACTION
### Piercing the Veil

320.    Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto made as if fully set forth below.

321.    The many affiliates and entities established by S. GOULETAS, N. GOULETAS and INVSCO were set up with the express purpose of perpetuating the fraudulent conduct as stated herinabove, and to avoid their obligations to the Plaintiffs.

322.    These persons and entities include but are not limited to, FISH, BENCH, KOVAL, SNC, SNM, 250 E. FLAMINGO, SEYBURN, KFI, KFH, CRS, GOLDSTEIN, REALTY SERVICES, REALTY, PRIVATE RESIDENCES, MCRS, BERKSHIRE, LYNN, MAC REALTY, MACKENZIE, NMI, CAMPBELL, DESMET, S. GOULETAS, N. GOULETAS, ALDINGER, OELKE, BAIRD, S. GOLDSTEIN, and ZINK.

323.    S. GOULETAS, N. GOULETAS and INVSCO neglected to adequately capitalize the subsidiary entities and appropriated all of the subsidiaries' assets which Defendants needed to perform on the leases with Plaintiffs.

324.    All the aforementioned Defendants represented themselves as identical to or strongly affiliated with INVSCO, which resulted in members of the public, including Plaintiffs, believing that INVSCO was responsible for all aspects of the business dealings and operation of the Meridian Condominiums.

325.    INVSCO admittedly participated in the illegal leasing of Plaintiffs' units as hotel lodging in known violation of the Clark County ordinances.

326.    All of the Defendants acted as agents of S. GOULETAS, N. GOULETAS and INVSCO and, under established corporate law and principles, the shareholders and officers and directors of INVSCO are liable for the illegal acts and programs Defendants established.

327.    Payments were often made to Defendants from entities of INVSCO not obligated to make payments under any lease or contract with Plaintiffs and Defendants disregarded the corporate formalities required of legitimate corporations.

328.    As a result of the wrongful and illegal activities of INVSCO and its affiliates, officers, directors and agents, Plaintiffs suffered the damages as aforesaid and hereinafter stated and incorporated by reference herein, and liability should be adjudged against S. GOULETAS, N. GOULETAS, MACKENZIE, ZINK and INVSCO and its officers, directors, and shareholders.

## TWENTIETH CAUSE OF ACTION
### Injunctive Relief

329.    Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto made as if fully set forth below.

330.    The wrongful activities of Defendants in tainting and damaging the reputation of the Meridian project, converting Plaintiffs property such as the furniture and appliances which were especially selected for the specific units of the homeowners, depriving the HOA of an accounting and its reserves, use of portions of the clubhouse for Defendants' own purposes to the detriment of the homeowners, and operating illegal condominium rentals have caused Plaintiffs irreparable

harm.

331.    To compound matters further, Defendants refuse to return the premises, although they are not paying rent, property taxes, nor association fees; and Plaintiffs are more than likely to succeed on the merits of their causes of actions herein, and public policy dictates that Defendants be enjoined from committing any further acts in violation thereof.

332.    Plaintiffs are entitled to a temporary restraining order and preliminary and permanent injunctions enjoining Defendants from continuing to engage in the activities as aforesaid and hereinafter stated and which are incorporated by reference herein,.

333.    Plaintiffs are further entitled to an injunction prohibiting Defendants from maintaining possession and lenders from foreclosing on the mortgages of Plaintiffs and an award of attorneys fees and costs in having to seek such relief against Defendants' activities, which anyone of any sense of honesty and business acumen would not be party to or affiliated with.

### TWENTY-FIRST CAUSE OF ACTION
#### Vicarious Liability

334.    Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto made as if fully set forth below.

335.    All of the individual Defendants and named subsidiaries and affiliates of INVSCO were agents or partners or officers and directors of INVSCO.

336.    All of the actions complained of herein which were directly performed by said agents were either performed at the direction of INVSCO or were performed in accordance with and within their scope of duties and/or employment of INVSCO.

337.    Under the doctrines of agency, respondeat superior, and/or vicarious liability, INVSCO is responsible for the damages to Plaintiffs as aforesaid and hereinafter stated and incorporated by reference herein.

### TWENTY-SECOND CAUSE OF ACTION
#### Equitable Indemnity

71

338.    Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto made as if fully set forth below.

339.    The actions of Defendants in running a hotel type operation and not having the proper approvals, including but not limited to not having the proper licenses and land use designation was solely the fault and responsibility of Defendants and not in any way the fault or responsibility of Plaintiffs.

340.    The Clark County assessments and impositions of fines and/or penalties and/or hotel room taxes against the Meridian, are and should be the sole responsibility of the Defendants and not the Plaintiffs.

341.    Plaintiffs are thus entitled to this Court's determination, declaration and award that Defendants are solely responsible for the assessments, fines, penalties and taxes imposed by the County, and Plaintiffs are entitled to their attorneys fees and costs for having to defend themselves against the specter of liability that has been imposed by Clark County.

## TWENTY-THIRD CAUSE OF ACTION
### Negligence/Negligence Per Se

342.    Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto made as if fully set forth below.

343.    Some of the Plaintiffs who purchased their units under the sale and leaseback program of Defendants, were not provided copies of the leases that Defendants indicated encumbered their property.

344.    Nor were Plaintiffs provided with copies of any subleases which they were not authorized to do nor were any disclosures made that said subleases were for an illegal overnight rental program.

345.    Said acts of Defendants were in violation of Nevada's real estate disclosure statutes and may constitute a violation of the federal RESPA statutes.

346.    As a result of Defendants violations, which constitute negligence and/or negligence per se, some of the Plaintiffs suffered damages.

347.    Plaintiffs are entitled to rescission of the agreements for the purchase of their properties, damages as aforestated and incorporated by reference herein, as well as pre-judgment and post-judgment interest, and attorneys fees and costs.

## TWENTY-FOURTH CAUSE OF ACTION
### Expungement of Deeds of Trust

348.    Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto made as if fully set forth below.

349.    The mortgage lenders above-named (herein "Lender Defendants") may claim an interest in the Plaintiffs' property purchased due to the wrongdoings of Defendants above-named.

350.    Due to the wrong doings of the INVSCO Defendants, Plaintiffs should be relieved of the indebtedness secured by the property of Plaintiffs.

351.    Said Lender Defendants are hereby joined herein to protect their interests in said property and their rights against Plaintiffs and/or Defendants.

352.    Plaintiffs have incurred attorneys fees and costs and is entitled to an award thereof against Defendants and lenders.

## TWENTY-FIFTH CAUSE OF ACTION
### Writ of Possession

353.    Plaintiff repeats, re-alleges and incorporates herein all of the allegations hitherto made as if fully set forth below.

354.    Many of the Plaintiffs while not having received rents, continue to be deprived of possession of their premises.

355.    Defendants have defaulted on the leases with Plaintiffs but continue to rent out the units of Plaintiffs and Plaintiffs are entitled to immediate possession of their units

356.    As a result of Defendants' default, Plaintiffs have suffered general and special

1  damages including loss of rent and profits and are exposed to foreclosure actions of Defendant

2  Lenders.

3      357.    At the very minimum, Plaintiffs are entitled to possession of their units and an

4  award for back rents and awarded their attorneys fees and costs.

### TWENTY SIXTH CAUSE OF ACTION
### Injunctive Relief-Real Property

7      358.    Plaintiff re-alleges and incorporates all previous paragraphs of this Complaint, as if

8  set forth fully herein.

9      359.    Plaintiffs, based upon the above and foregoing, enjoy probability of success on the

10  merits of their Complaint. Notwithstanding this fact, Plaintiffs suffer damages, through the loss of

11  title through foreclosure sale and the loss of personal property through the seizure of their

12

13  condominium units.

14      360.    Plaintiffs request that Defendants be temporarily and permanently enjoined during

15  the pendency of this action from occupying the any units of the Meridian Complex for purposes of

16  conducting business activities;

17      361.    Plaintiffs request that Defendants be temporarily and permanently enjoined during

18  the pendency of this action from removing furniture from Plaintiffs;

19

20      362.    Plaintiffs request that Defendants be temporarily and permanently enjoined during

21  the pendency of this action from destroying, removing, or concealing and documents or

22  information related to the development, management, and use of the Meridian Condominium

23  Complex;

24      363.    Plaintiffs request that Defendants be temporarily and permanently enjoined during

25  the pendency of this action from taking any HOA funds or using any HOA funds;

26

27      364.    Plaintiffs request that Defendants be temporarily and permanently enjoined during

28  the pendency of this action from occupying or conducting business from the club house /

commercial areas of the Meridian Complex;

365.    Plaintiffs request that Defendants be temporarily and permanently enjoined during the pendency of this action from transferring title in any Meridian Complex unit or parcel of real property located on the Meridian Complex.

366.    Plaintiffs request that Defendants be temporarily and permanently enjoined during the pendency of this action from foreclosing through trustee sale on any of the condominium units in the Meridian Complex; and,

367.    Finally Plaintiffs request that Defendants be enjoined from committing any waste to the Property during the pendency of this action.

368.    Due to the uniqueness of the Property, in the absence of such relief, Plaintiffs will be irreparably be harmed, and may not be made whole by monetary recovery.  Thus, until the Court may determine such issues, the status quo should be maintained, and Defendants should be enjoined as set forth above.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand that judgment be entered in their favor against Defendants, and each of them, jointly and severally, and that Plaintiffs be awarded relief as follows:

- General and special damages in excess of $5,000,000.00;
- Compensatory damages;
- Exemplary damages;
- Consequential damages;
- Punitive damages;
- Pre-judgment and post-judgment interest;
- Injunctive relief;
- Declaratory relief;

1    • Writ of Possession be issued;

2    • For such other and further relief, legal or equitable, as the Court may deem just and

3    proper in the premises.

4

5    Dated this 14 day of October, 2009.

6                                    MICHAEL R. MUSHKIN & ASSOCIATES

7

8                          By: /s/ Michael R. Mushkin_____
                                MICHAEL R. MUSHKIN, ESQ.
9                               Nevada Bar No. 2421
                                STEVEN M. SHINN, ESQ.
10                              Nevada Bar No. 6822
                                MICHAEL R. MUSHKIN & ASSOCIATES, P.C.
11                              4475 S. Pecos Road
                                Las Vegas, Nevada 89121
12                              Telephone: (702) 386-3999
                                Facsimile: (702) 454-3333
13                              michael@mushlaw.com;
                                steven@mushlaw.com
14                              *Attorneys for Plaintiffs*

15

16                              WILLIAM H.  GAMAGE, Esq.
                                Nevada Bar No. 9024
17                              AMY M. GAMAGE, Esq.
                                Nevada Bar No. 9304
18                              GAMAGE & GAMAGE
                                231 South Third Street, Suite 285
19                              Las Vegas, Nevada 89101
                                (702) 386-9529
20                              (702) 382-9529
                                wgamage@gamagelaw.com
21                              agamage@gamagelaw.com
                                *Attorneys for Plaintiffs*
22

23

24

25

26

27

28